**Johnnie Ray LEE, Plaintiff-Appellant,**

v.

**SOUTHERN HOME SITES CORP.,**
**Defendant-Appellee.**

No. 30738.

United States Court of Appeals,
Fifth Circuit.

June 11, 1971.

Fred L. Banks, Jr., Reuben V. Anderson, Jackson, Miss., Jeffry A. Mintz, Jack Greenberg, R. Sylvia Drew, New York City, William Bennett Turner, San Francisco, Cal., for plaintiff-appellant.

George E. Morse, Eldon L. Bolton, Jr., White & Morse, Gulfport, Miss., for defendant-appellee.

Before TUTTLE, WISDOM, and INGRAHAM, Circuit Judges.

WISDOM, Circuit Judge:

This case raises the question whether attorney's fees should be awarded to successful plaintiffs who charged that the defendant violated 42 U.S.C. § 1982 by refusing to sell lots to Negroes on the same terms the defendant sold lots to whites. We hold for the plaintiffs-appellants and remand the case.

June 17, 1968, the Supreme Court decided Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189, holding that 42 U.S.C. § 1982 barred private racial discrimination in the sale of housing and that federal courts should fashion an effective remedy to enforce the rights declared by Congress in the statute. July 30, 1968, Southern Home Sites Corporation, a Mississippi company engaged in real estate development, sent a form letter to Lee offering to sell him for $49.50 in cash a lot said to be worth $600.

The letter was part of Southern's promotional campaign to develop "Ocean Beach Estates" near Ocean Springs,

4. Conference Report, H.R.Rep.No.2543, 83d Cong.2d Sess. (1954), U.S.Code Cong. & Admin. News 1954 at page 5299.

Mississippi. Ocean Beach Estates contained 1,653 lots. As of the time of the trial, 1,206 had been sold. Of these, Southern had sold 119 to others on the same terms contained in the offer to Lee.

The letter to Lee, and all those sent out in Southern's program, stated that for the recipient to take advantage of the offer he "must be a member of the white race". Shortly after receiving the letter, Lee travelled approximately 100 miles to the Southern office with $50 cash and the letter; he was ready, able and willing to purchase a lot on the terms in the letter. Southern officials refused to sell to Lee on the explicit ground that he was a Negro; Ocean Beach Estates was only for whites. Southern planned a separate, all-black development and it kept a list of black applicants for that development.

October 15, 1968, Lee sued in the district court on behalf of himself and all other black citizens similarly situated. The district court awarded an injunction against future racial discrimination and ordered Southern to sell Lee a lot on the terms offered in the letter. The court denied compensatory or punitive damages, denied a motion to require Southern to publish newspaper notices offering to sell to any Negroes who had received notices in the past, and denied Lee's motion for attorney's fees. On appeal this Court affirmed as to damages, and remanded the case to require the publication of notices and to have the district court make findings of fact on the issue of attorney's fees. Lee v. Southern Home Sites Corporation, 5 Cir. 1970, 429 F.2d 290.

On remand the district judge found that Southern did not have knowledge of the Supreme Court's resuscitation of § 1982 in Jones v. Alfred H. Mayer Co. at the time it mailed the letter to Lee. For this reason, the court concluded that Southern's conduct was "not malicious, oppressive or so 'unreasonable and obdurately obstinate' as to warrant an award for attorney's fees". We note, in passing, that at the time the complaint was served, the defendant was put on notice of Section 1982. Certainly, three months later, when the defendant's counsel filed his answer he must have known of Jones v. Alfred H. Mayer Co. Continued litigation of the merits of the claim was "unreasonable, obdurate obstinacy". We base our holding, however, on a broader ground.

■ On this second appeal, we reverse the district court's denial of attorney's fees. We hold that attorney's fees are part of the effective remedy a court should fashion to carry out the congressional policy embodied in Section 1982.

In Jones v. Alfred H. Mayer Co. the Supreme Court recognized that the language of 42 U.S.C. § 1982 is simply declarative of certain rights. The section provides that:

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

Nevertheless, the Court, relying on a long line of federal cases, held that federal courts have a duty to fashion an effective remedy to carry out the purpose of the statute. As the Court had said in J. I. Case Co. v. Borak, 1964, 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423, 428:

> When a federal statute condemns an act as unlawful, the extent and nature of the legal consequences of the condemnation, though left by the statute of judicial determination, are nevertheless federal questions, the answers to which are to be derived from the statute and the federal policy which it has adopted. (citations omitted)

The recent case of Mills v. Electric Auto-Lite Co., 1970, 396 U.S. 375, 90 S. Ct. 616, 24 L.Ed.2d 593, demonstrates that it is proper for federal courts to award attorney's fees when this remedy effectuates congressional policy. In *Mills* the Court extended the established rule allowing recovery of attorney's fees in derivative actions. The plaintiff had

sued derivately on behalf of the corporation, seeking to undo a merger of his corporation into another corporation. He alleged that the directors had obtained proxies favoring the merger by use of a material misrepresentation in the proxy solicitation. Recognizing the strong congressional policy favoring "[f]air corporate suffrage [as] an important right," the Court held in part that those who establish a violation of the securities laws by their corporation and its officials should be reimbursed by the corporation for the costs of establishing the violation, including attorney's fees.

This Court-created remedy was justified as necessary to further the "corporate therapeutics" called for in Congress' strong policy favoring fair and informed corporate suffrage. The Court reasoned that the situation was not too different from the typical derivative action, where it is appropriate for the corporation to pay the attorney's fees because the corporation receives a benefit from the suit. But the benefit that the Court focused on is conferred on all shareholders in the country, and therefore established derivative action considerations do not seem to apply to the situation. Therefore the Court's decision is better understood as resting heavily on its acknowledgment of "overriding considerations," that private suits are necessary to effectuate congressional policy and that awards of attorney's fees are necessary to encourage private litigants to initiate such suits. *See* Note, The Supreme Court, 1969 Term, 84 Harv.L.Rev. 1, 216–17 (1970); Note, The Allocation of Attorney's Fees After Mills v. Electric Auto-Lite Co., 38 U. Chi.L.Rev. 316, 323–28 (1971).

*Mills* does not signal that courts have a free hand in adopting awards of attorney's fees as remedies to enforce all statutes. In Fleishman Distilling Corp. v. Maier Brewing Co., 1967, 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475, the Court struck down the practice of awarding such fees in patent cases. But there the Court relied on the detailed legislation covering judicial remedies available to plaintiffs, including compensatory and treble damages, in finding that the statute implicitly excluded a separate award for attorney's fees.

Section 1982 is not a statute providing detailed remedies, and thus the policy of effectuating congressional purpose does not militate against an award of attorney's fees. Additionally, here as in *Mills* there is a strong congressional policy behind the rights declared in § 1982. Awarding attorney's fees to successful plaintiffs would facilitate the enforcement of that policy through private litigation.

As originally enacted as part of the Civil Rights Act of 1866, what is now § 1982 was to be enforced primarily through federal criminal prosecutions. Responding to a proposed amendment in the House that would have removed the penal sanctions, James Wilson, sponsor of the bill, clearly expressed the concern that Congress had for the enforceability of the newly declared rights. Wilson said that between the two approaches,

> There is no difference in the principle involved. * * * There is a difference in regard to the expense of protection. There is also a difference as to the effectiveness of the two modes. * * * This bill proposes that the humblest citizen shall have full and ample protection at the cost of the Government, whose duty it is to protect him. The Amendment of the gentleman recognizes the principle involved, but it says that the citizen despoiled of his rights * * * must press his own way through the courts and pay the costs attendant thereon. This may do for the rich, but to the poor, who need protection, it is mockery.

Cong. Globe, 39th Cong., 1st Sess. 1295. The act was passed with the criminal provisions included. Later the penal provisions were separated or eliminated. The remaining criminal statute derived from the 1866 Act, 18 U.S.C. § 242, applies only to actions "under color of

law". The Supreme Court said in Jones v. Alfred H. Mayer Co., 392 U.S. at 417, 88 S.Ct. at 2191, that against private discrimination § 1982 is today "enforceable only by private parties acting on their own initiative".

Thus in light of the concern of the enacting Congress with the enforceability of the rights and the strong commitment to those rights, we consider it appropriate for the courts, within the mandate referred to in Jones v. Alfred H. Mayer Co. and J. I. Case Co. v. Borak, to award attorney's fees to successful plaintiffs as a means of carrying out the aims of the statute.

The actions of Congress in passing more recent civil rights acts support this conclusion. Congress was concerned about the methods for enforcement of the Civil Rights Acts of 1964 and 1968. Once again Congress recognized that private enforcement of the rights, unaided by financial or other assistance, is unlikely. Therefore, among other aids in enforcing these laws, Congress provided that courts shall award successful plaintiffs in suits attacking specified types of discrimination reasonable attorney's fees, to be paid by the losing defendant. The Fair Housing Law, 42 U. S.C. § 3612(c) provides that in addition to injunctive relief the court "may award to the plaintiff actual damages and not more than $1000 punitive damages, together with court costs and reasonable attorney fees in the case of a prevailing plaintiff: *Provided* that the said plaintiff in the opinion of the court is not financially able to assume said attorney's fees." And in both the Public Accommodations and Equal Employment Opportunities sections of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000a–3(b) and 2000e–5(k), Congress provided that " * * * the court, in its discretion, may allow the prevailing party * * * a reasonable attorney's fee as part of the costs * * *."

The Supreme Court has held that the Fair Housing Law did not amend § 1982. Jones v. Alfred H. Mayer Co., 392 U.S. at 417 n. 20, 88 S.Ct. at 2191. On the other hand, in fashioning an effective remedy for the rights declared by Congress one hundred years ago, courts should look not only to the policy of the enacting Congress but also to the policy embodied in closely related legislation. Courts work interstitially in an area such as this.

In adjudicating the shape of the remedies for violations of 42 U.S.C. §§ 1981,[1] 1982, courts must give weight to the actions of Congress in enacting the sections of the 1964 and 1968 Civil Rights Act aimed at very similarly defined social problems. In this context, the enactment by the 88th and 90th Congress of the two Civil Rights Acts is relevant. Attacking problems similar to those dealt with in the 1866 law, Congress gave great attention to the question of remedies, prescribing detailed rules. Congress expressed no intention to amend or replace the older statutes, and therefore insofar as the commands of the older statutes are clear—as in the scope of the rights declared—the more recent Acts are of no relevance. But where the older statutes are silent, and where the responsibility for fashioning an effective remedy must be met by the courts, they should look to the policies embodied in the remedial provisions of the more recent statutes as a reference in shaping remedies to the needs of the older statutes. In two other Circuits, courts of appeals, have grappled with this problem with respect to the relationship between 42 U.S.C. § 1981 and the Equal Employment Opportunities section, Title VII, of the 1964 Act. They considered whether the Title VII requirement of utilizing administrative remedies prior to seeking judicial relief should have any effect on the availability of judicial relief under § 1981. See

1. Courts dealing with 42 U.S.C. § 1981 in the wake of Jones v. Alfred H. Mayer Co. have held that this section has equally broad, though previously unrecognized, force. *See, e. g.,* Young v. International Telephone & Telegraph Co., 3 Cir. 1971, 438 F.2d 757.

Young v. International Telephone & Telegraph Co., 3 Cir. 1971, 438 F.2d 757 (district court should consider availability of Title VII administrative remedy as equitable factor in determining relief) ; Waters v. Wisconsin Steel Works of International Harvester Co., 7 Cir. 1970, 427 F.2d 476 (Court engrafts onto § 1981 the jurisdictional requirement that plaintiff use Title VII administrative remedies or plead a reasonable excuse for failing to do so).[2]

In keeping with this approach, the effective remedy for securing the rights declared in § 1982 should include the award of attorney's fees to successful plaintiffs much as provided in the Fair Housing Law, 42 U.S.C. § 3612(c). The same policies supporting Congress' provision for attorney's fees in that statute apply to fair housing suits under § 1982.

In Newman v. Piggie Park Enterprises, 1968, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263, the Court discussed the standard for awarding attorney's fees under 42 U.S.C. 2000a–3(b) of the Public Accommodations section of the 1964 Act. The Court found that the Act embodied a strong congressional policy and that private litigation was envisioned as the major means of securing broad compliance with the law. "A Title II suit is thus private in form only. * * * If [the individual litigant] obtains an injunction, he does so not for himself alone but also as a 'private attorney general', vindicating a policy that Congress considered of the highest priority." Damages are unavailable under Title II.

Therefore "[i]f successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts." The statutory provision for attorney's fees was designed to encourage those subjected to discrimination to seek judicial relief and therefore courts should award fees to successful plaintiffs "unless special circumstances would render such an award unjust." Other courts have applied the Piggie Park rule to Title VII cases. See Lea v. Cone Mills Corp., 4 Cir. 1971, 438 F.2d 86; [3] Parham v. Southwestern Bell Telephone Co., 8 Cir. 1970, 433 F.2d 421; Clark v. American Marine Corp., E.D.La.1969, 304 F.Supp. 603 and 1970, 320 F.Supp. 709. It would seem that the same rule should apply to the provision for attorney's fees in Title VIII cases subject to the statutory proviso concerning plaintiff's financial ability to assume the fees. Since under Title VIII damages—both compensatory and punitive—are also available, a court awarding such damages might consider this factor in determining whether and how much to award.

We think the factors relied on in Piggie Park in interpreting the provision for awarding attorney's fees apply also to suits under § 1982. The policy against discrimination in the sale or rental of property is equally strong. The statute, under present judicial development, depends entirely on private enforcement. Although damages may be

2. Although this Court has taken a different view with respect to the complete independence of Section 1981 from Title VII as requiring any deference to be paid to the administrative remedies authorized in Title VII (see Sanders, v. Dobbs Houses, Inc., 5 Cir. 1970, 431 F.2d 1097), we think that these two cases do indicate the propriety of considering parallel legislation to assess the current intent of Congress with respect to remedies as distinguished from the scope of the rights declared. Particularly, in light of the fact that Section 1981 and Title VII are both remedial acts, both seeking to cure long histories of injustice, parallel

legislation should be looked to as an aid in helping the court to fashion a remedy. As we have held in the Dobbs Houses case, however, Title VII should not be interpreted as limiting the scope of the rights declared in §§ 1981 and 1982 or as creating a jurisdictional hazard in the bringing of a complaint under one of the original Civil Rights Acts.

3. Lea also decided that the fact that the plaintiff was represented by an organization attorney who would not look to the plaintiff for payment, did not make inapplicable the requirement of a reasonable attorney's fee award.

available, *see* Sullivan v. Little Hunting Park, 1969, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386, in many cases there may be no damages or damages difficult to prove. To ensure that individual litigants are willing to act as "private attorneys general" to effectuate the public purposes of the statute, attorney's fees should be as available as under 42 U.S.C. § 3612(c).

For these reasons, the district court's denial of attorney's fees is reversed. The case is remanded to the district court for a determination of reasonable attorney's fees consistent with this opinion.