Joseph E. PEGUES, Plaintiff-Appellant,

v.

Mrs. Louis K. BAKANE and Art Rice Realty Company, Defendants-Appellees.

No. 30375.

United States Court of Appeals, Fifth Circuit.

July 27, 1971.

Demetrius C. Newton, Birmingham, Ala., Jack Greenberg, Sylvia Drew, Conrad K. Harper, New York City, for appellant.

Charles A. Speir, William F. Irons, Speir, Robertson, Jackson & Irons, Birmingham, Ala., for appellees.

Before BROWN, Chief Judge, COLEMAN and CLARK, Circuit Judges.

COLEMAN, Circuit Judge.

This is an appeal from the denial of a preliminary injunction. Appellees moved to dismiss the appeal for mootness. We carried the motion with the case and have heard oral argument on both the motion and the merits. We dismiss the appeal as moot.

The District Court held an evidentiary hearing on the motion for a temporary restraining order and for a preliminary injunction. He held that the plaintiffs had not shown themselves to be entitled to relief.

The complaint asserted that Mrs. Louis K. Bakane and Art Rice Realty Company refused to show a home to Joseph Pegues and his wife, members of the Negro race, or to negotiate its sale in violation of 42 U.S.C., §§ 1981, 1982, and § 804(a) of the Fair Housing Act of 1968.

The Pegues are residents of Birmingham, Alabama, where both teach school. Their son, Terry Pegues, is a disabled veteran of the Vietnam War and also resides in Birmingham. On June 2, 1970, the elder Pegues responded to an advertisement in a local newspaper offering five homes in a new subdivision located in Vestavia, Alabama.

Mr. Pegues called Art Rice Realty Company and arranged to see the houses listed. An agent for the company, Mrs. Louis K. Bakane, agreed to meet the Pegues at the subdivision in twenty min-

utes and gave instructions for reaching the area by automobile. The Pegues and their son then proceeded to the development. On the way they got lost and were ten to fifteen minutes late arriving. According to the Pegues, when they finally arrived Mrs. Bakane was standing in the driveway of the house. They further stated that when Mrs. Bakane saw them she turned and went into the basement of the house, which was being used as an office. Mr. Pegues got out of his car and followed her into the basement. When he entered she was talking on the telephone.

Mrs. Bakane testified that prior to entering the house *she had not seen the Pegues*, and since they were late, she was calling her office for instructions as to what to do next.

Mr. Pegues came in and when Mrs. Bakane finished her call, she informed him that *she had to return to her office.* She told him, if he liked, to look around and that the other houses in the subdivision were open for inspection. These houses had "open house" signs in front of them. Before she left Mrs. Bakane also told Pegues that if he were interested to contact Ray Benson, sales director of Art Rice Realty. Mrs. Bakane then departed but the Pegues looked at the property.

Mr. Pegues testified that subsequent to their inspection of the house he placed two calls for Mr. Benson and left his telephone number. Benson acknowledged only one call, but admits that he did not return it. The stated reason was that he made an oral credit check with Merchants Credit Association. Benson testified that though this check was not made on all sales it was done frequently regardless of race. The credit check disclosed eleven creditor suits against the Pegues in the past. Five of these suits were shown to be unsatisfied. In rebuttal, Pegues testified that he no longer owed these debts.

In regard to financing the house Mr. Pegues testified that he had a certificate of eligibility from the Veterans Administration for $12,500, that he and his wife had an annual income of approximately $14,600 from schoolteaching, that he received $100 a month from the Federal Government for service disability, and that he had $4,000 cash. The houses in which he was interested were in the $28,000 to $32,000 range. The record indicates that Terry Pegues was also interested in buying one of the houses although he was not a party to this suit and had made no offer of purchase.

The Pegues never went to the offices of the Art Rice Realty Company and never offered, on the telephone or otherwise, to buy any of the houses, see Lee v. Southern Home Sites Corporation, 5 Cir., 1970, 429 F.2d 290, in which Lee went to the office of the realtor and specifically offered to close the transaction.

From these facts the District Court found that the Pegues had failed in their burden of proof and denied their motion for injunctive relief. Following this order [dated July 3, 1970] the appellant filed a notice of appeal, July 13, 1970. The next day the appellees offered to show the Pegues the property and to negotiate a sale. On July 24, 1970, a contract was executed between the parties but there was no closing. Evidently the closing was delayed pending the approval of the Veterans Administration. Finally, in February, 1971, the transaction was consummated and the Pegues became owners of the home for $31,400.

On appeal Pegues, of course, contends that he was denied the right to see and negotiate for the sale of the houses in question. The fact remains that before the case came to hearing in this Court the Realty Company conveyed the home to the plaintiff-appellant and he became the owner of it.

The Sixth Circuit has recently decided an almost identical case. In Cash v. Swifton Land Corporation, 6 Cir., 1970, 434 F.2d 569, the Cashes sought to forbid Swifton from refusing on racial grounds to rent an apartment to them

and to "all similarly situated Negro citizens." The complaint was filed and a temporary restraining order was issued. The day after the complaint was filed Swifton offered to rent the apartment to the Cashes. At the time of the hearing the Cashes had not rented the apartment. At the end of the hearing the District Court stated that it would wait a week to see if a rental agreement could be worked out. Within that time the Cashes rented the apartment, and the District Court on its own motion dismissed for mootness. No punitive damages were awarded, costs were taxed to Swifton, and *the Cashes waived an award of attorney's fees.*

On appeal the Court held:

"The complaint alleges only two instances of discrimination by the Appellee: one against the Cashes, the other against an unidentified family. Counsel for the Appellants were unable to state to the District Court that there were others 'similarly situated' with the Cashes. When the Cashes' controversy was mooted, the only one remaining was that of the unnamed family. Clearly, one family is not a class. * * * It is clear, however, that an action is not maintainable as a class action merely because it is designated as such in the pleadings."

The instant case presents substantially the same situation. There is no evidence that anyone other than the Pegues made any attempt to purchase the house or houses. In fact, their attempt was found by the District Court not to have been an offer to purchase. As in *Cash*, there was no showing that there were others "similarly situated". Thus it is that there no longer remains a justiciable controversy between the Pegues on one hand and the Realty Company on the other. They have settled their differences and the Pegues have prevailed in their desire to acquire the home. As to these features the case is undoubtedly moot.

On oral argument, however, counsel for the appellant contended that the issues of actual and punitive damages, costs, and attorney fees were not moot. We agree with the Court in *Cash* that the settlement by the parties does not moot the question of damages. However, unlike *Cash*, the instant case has had a full hearing before the District Court, who found no discrimination against or damage to these appellants. We could, of course, weigh these findings by the standards of Rule 52(a), Federal Rules of Civil Procedure. We do not find this to be required, however, because the record shows without contradiction that while the appellant failed in his efforts to contact the Realty Company representative by telephone they never went to the office and never made an actual offer to purchase the property prior to filing suit. Had he done so, and .had he prevailed in litigating the matter, the result would be different, at least as to attorney fees, see Lee v. Southern Home Sites Corporation [dated June 11, 1971] 444 F.2d 143.

The judgment below is vacated and the case is remanded to the District Court with directions to dismiss the proceedings as moot, United States of America v. Knippers and Day Real Estate, Inc., et al., 5 Cir., 425 F.2d 1081.

Vacated and remanded with directions.