Joseph T. WATKINS et al., Plaintiffs,

v.

Walter E. WASHINGTON et al.,
Defendants.

Civ. A. No. 2977–69.

United States District Court,
District of Columbia.

June 8, 1973.

Amy Scupi, William Karas, Ralph Temple, Washington, D. C., for plaintiffs.

John Suda, Asst. Corp. Counsel, Washington, D. C., for defendants.

## MEMORANDUM OPINION

GESELL, District Judge.

Joseph T. Watkins, a Negro housing inspector and former president of his union's local, filed a complaint under Commissioner's Order No. 66–1251 on December 8, 1966, alleging that he and other non-white employees of the Housing Division of the Department of Licenses and Inspections were subjected to systematic racial discrimination in various personnel practices since the formation of the Department in 1964. After many delays not caused by Watkins, hearings were held before a three-man Hearing Committee in 1968 at which testimony was taken of 22 individuals. A transcript of 3,000 pages was developed, containing 80 exhibits. Findings by the Hearing Committee and separate findings by the Equal Employment Opportunity Officer sustained most of the allegations made. The findings, along with recommendations for remedial action, were transmitted to the Mayor in accordance with the procedures of Commissioner's Order No 66–1251. On September 9, 1969, the Mayor in effect dismissed the complaint, having concluded that the conditions then prevailing in the Department, which had been reorganized as a Division of the Department of Economic Development, did not warrant any action on his part.

In October 1969 this complaint was filed as a class action requesting the Court to set aside the Mayor's action and order appropriate relief.* The matter is now before the Court on the administrative record and cross-motions for summary judgment which have been fully briefed and argued.

■ Defendants preliminarily assert that plaintiff Watkins may not maintain this suit as a class action, and that the action is barred in any event by the doctrine of sovereign immunity. Both these claims are rejected. Whether Watkins could have qualified to maintain his complaint as a class action had it been filed in this court *ab initio* is not at issue. The proceeding under the Commissioner's Order has from the beginning been maintained on a class basis; the hearings and findings dealt with issues applicable both to the class as a whole and to individuals within the class; the remedies proposed by the Hearing Committee and the E.E.O. officer dealt with all aspects of the complaint; and the Mayor's action was predicated on grounds generally applicable to the class. Under these circumstances, the Court finds that this is a proper class action under Rule 23, Federal Rules of Civil Procedure.

■ Nor is the claim barred by the doctrine of sovereign immunity. It was settled long ago that the courts have power under the Constitution to remedy racial discrimination by a public agency in any form. *See, e. g.,* Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958).

The Court finds on an independent examination of the administrative record filed herein that the allegations of racial discrimination in the Department of Licenses & Inspections were fully substantiated, and that the findings of the Hearing Committee and the E.E.O. officer were clearly and unequivocally supported by the evidence. There was no basis in the evidence upon which the Mayor could reject the basic finding of blatant and continuous racial discrimi-

---

* Jurisdiction is based on 28 U.S.C. § 1331 and the general jurisdiction of this Court existing at the time the complaint.

nation. The question presented, therefore, is whether the Mayor's ambiguous and limited action on the recommendations of the Hearing Committee and the E.E.O. officer was sufficient.

██ To be sure, the Mayor has discretion in framing an appropriate remedy in a proceeding under Commissioner's Order No. 66–1251, but where a definite and persistent pattern of unconstitutional racial discrimination has been amply demonstrated, he must take affirmative steps to re-enforce his expectations. It is not sufficient to express the hope that discrimination will disappear and to exhort those involved to a better performance. Great expectations are not sufficient to root out racial discrimination. As the Supreme Court stated in Louisiana v. United States, 380 U.S. 145, 154, 85 S.Ct. 817, 822, 13 L. Ed.2d 709 (1965):

> the court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future.

██ The Court will not disturb the Mayor's determination that no disciplinary action be taken against present or former employees of the Division, nor will the Court direct that any particular individuals be promoted to specific jobs within the Division. There are some employees in the Division, however, whose advancement has been demonstrably impeded by racial discrimination. To compensate for this injury, the Court will direct that the sum of $32,400 be paid to the fourteen persons listed in Appendix E to the Complainant's Proposed Enforcement Order, the sum to be divided pro rata among these persons according to the "period of compensation" as determined by Complainants and set forth in that Appendix. The Court will also order relief to three named individuals as recommended in paragraph 8 of the E.E.O. Officer's recommendations and paragraphs 3(c) and 4(b) of the Complainant's Proposed Enforcement Order.

In light of the fact that three years have passed since the findings were made in this case, the Court will not direct particular changes in personnel practices or periodic reports as recommended by the E.E.O. Officer. However, the head of the Division of Licenses & Inspections will be directed to prepare a comprehensive report covering the period of January 1, 1968, to the present, detailing by race the number of persons hired and promoted during that period in each job category, the number of persons against whom disciplinary action has been taken and the reasons therefor, and the number of persons occupying each salary grade classification within each branch of the Division as of the present time as compared with January 1, 1968. The report shall further detail any concrete steps taken by the Division since January 1, 1968, to eliminate the effects of past discrimination and ensure nondiscrimination in the future. Copies of this report shall be submitted by October 1, 1971, to the Mayor, as well as to the head of the Department of Economic Development, the Equal Employment Opportunity Officer, and counsel for plaintiffs in this case. On the basis of the report and the advice of the other recipients of the report, the Mayor shall determine whether racial discrimination continues to exist in the Division in any form, and if so he shall take immediate steps to eliminate any such discrimination.

Defendants' motion for summary judgment is denied. Plaintiffs' motion is granted to the extent indicated in this Memorandum. Plaintiffs shall submit an appropriate order in accordance with this Memorandum within ten days.

### ORDER AND FINAL JUDGMENT

In accordance with the evidence of record, with the findings of this Court on July 6, 1971, and with the Opinion and Order of the United States Court of Appeals for the District of Columbia

Circuit, 472 F.2d 1373, it is hereby ordered that:

I. Defendants Walter E. Washington and Julian R. Dugas, their agents, officer, successors in office, employees, and all persons acting in concert with them be and are hereby permanently enjoined from engaging in any employment practices in the Housing Division of the Department of Economic Development (formerly Housing Division of the Department of Licenses and Inspections) including recruitment, hiring, appointment, training, promotion, transfer to or from the Housing Division, disciplinary action, retention, or any other personnel action, for the purpose or with the effect of discriminating against any employee or applicant or potential applicant for employment on the ground of race or color.

II. It is further ordered that the defendants shall, within 90 days from the date of this Order, cause to be paid to the following persons the following sums:

| | |
|---|---|
| Mr. Baxter O. Hargrave | $ 987.14 |
| Mr. Ezell M. Harvell | 987.14 |
| Mr. Robert Higginbotham | 448.70 |
| Mr. Coleman S. Holmes | 3,679.34 |
| Mr. Thomas I. Jones | 3,365.25 |
| Mr. Edward Mosley | 3,140.90 |
| Mr. Marcario S. Somera | 942.27 |
| Mr. Carroll A. Swanson | 2,961.42 |
| Mr. James R. Talley | 1,480.71 |
| Mr. Frederic W. Thomas | 3,320.38 |
| Miss Roberta M. Tinnen | 3,679.34 |
| Mr. Percy W. Tucker | 448.70 |
| Mr. Joseph T. Watkins | 3,634.47 |
| Mr. Nathaniel Wright | 3,320.38 |

III. It is further ordered that the defendants shall:

(1) Determine, within 14 days from the date of this Order, the wages lost by Mr. Edward Mosley and Mr. Percy Tucker during the period of their suspension from the Department of Licenses and Inspections and shall pay such wages within 90 days from the date of this Order to Mr. Mosley and Mr. Tucker with interest at the rate of 6% commencing from the date of such suspensions.

(2) Remove all records of reprimands or other disciplinary actions in the personnel folders of Messrs. Frederic Thomas, Edward Mosley, and Percy Tucker.

IV. It is further ordered that the defendants convene a Hearing Committee for the purpose of determining the promotional status of employees Joseph T. Watkins and Marcario Somera. That hearing panel shall be selected in the manner provided in Commissioner's Order 66–1251. The panel shall be instructed to review the present position structures of the Department, and may, in its discretion, acquire the assistance of a personnel specialist to determine the availability of current positions within the Housing Division of the Department of Economic Development consistent with the qualifications and experience of Mr. Watkins and Mr. Somera. The hearing panel shall be convened within 30 days of the date of this Order, and Mr. Watkins, Mr. Somera, and/or their representatives shall be afforded the opportunity to appear before the panel for the purpose of representing their qualifications and experience for any positions currently available within the Housing Division of the Department of Economic Development. At such time as suitable positions commensurate with the qualifications and experience established above are determined to be available, Mr. Watkins and Mr. Somera shall be immediately offered such positions. The hearing panel considering current position availability within the Housing Division of the Department of Economic Development shall be conducted as a special administrative hearing board under Commissioner's Order 66–1251 subject to review by the Mayor and then, if requested by plaintiffs, this Court.

V. To insure that the effects of past discrimination will be eliminated and there there will be no discrimination in the future, the defendants are further ordered to:

(1) Formulate, within 60 days from the date of this Order, precise and reasonable Qualification Standards for every position in the Housing Division of the Department of Economic Develop-

ment, and shall submit said standards to counsel for plaintiffs. Within 75 days from the date of this Order, a copy of such Qualification Standards shall be posted in each office of the Housing Division and a copy shall be sent to each employee of the Housing Division. In the event any new positions are created within the Division, within 30 days of their creation the qualifications for such new positions shall be formulated and added to the Qualification Standards which shall thus be kept current, and the current Standards shall be those posted. A copy of Qualification Standards shall be submitted to each applicant for appointment for any position in the Housing Division.

(2) Keep a written list of each applicant for employment in the Housing Division of the Department of Economic Development showing such applicant's name, address, race, and qualifications. The list shall show by whom the applicant was interviewed, and the final disposition of the application. If the applicant is rejected, a written notice shall be given the applicant stating whether the rejection was because of (a) lack of vacancies, or other stated reason, for positions in the Division for which the applicant is qualified, or (b) lack of qualification of the applicant for any existing vacancies. If the applicant is rejected for failure to qualify for an existing vacancy, the applicant shall be notified wherein his qualifications were lacking by reference to the Qualification Standards, and if the rejection is based on the superior qualifications of another applicant, the rejected applicant shall be notified. If there is no vacancy for a qualified applicant, the application shall be kept on file for four years and, as vacancies occur, they shall be offered to qualified applicants on the list on the basis of the earliest dates of application, provided that no applicant on the list shall be offered a position under this paragraph unless all qualified applicants for promotion are rejected in accordance with the provisions of paragraph VI(2) of this Order.

(3) Formulate, within 60 days of this Order, a promotion plan that permits non-white employees to qualify for any and all positions in the Housing Division of the Department of Economic Development based upon experience and education. Such plan shall give no weight to present GS classifications held by non-white employees. The plan shall be applicable to those non-white employees hired by the former Department of Licenses and Inspections prior to January 1, 1964, and shall not exempt non-whites who are ex-employees who have five or more years of experience prior to leaving the former Department of Licenses and Inspections.

VI. The defendants are hereby enjoined from making any appointments in the Housing Division which have not been the subject of a Vacancy Announcement as described herein. The defendants are ordered to:

(1) Prepare Vacancy Announcements for any positions open in the Housing Division of the Department of Economic Development and post such Vacancy Announcements in at least three prominent places within the Division. Such Vacancy Announcements shall show the grade and title of the vacant position and shall describe the qualifications required for that position in the same terms in which the position is described in the Qualification Standards referred to herein in paragraph V(1). The Vacancy Announcement shall set forth a date on which the Housing Division shall begin to consider filling the position, and that date shall be no sooner than seven days from the date of posting of the Announcement. No appointment shall be made to any position which has not been described in those Qualification Standards and for which a Vacancy Announcement has not been prepared in accordance with the terms of this Order.

(2) Subject to the provisions of paragraph V(3) of this Order, a position noticed in a Vacancy Announcement shall be awarded as follows: if there is more than one qualified applicant for the position, the promotion shall be awarded to

the applicant with the greatest seniority in the Housing Division, unless there is a specific reason for not awarding such applicant the position. In computing seniority, 30 credits at an accredited college shall be equal to one year's seniority. In the event the promotion is not awarded the qualified applicant with the greatest seniority, written notice shall be given to such applicant stating (a) that such applicant was the most senior qualified applicant; (b) that such applicant was passed over for the position; and (c) the reason why such applicant was passed over for the promotion. All such notices of rejection shall include a copy of this Final Judgment and Order. In the event the applicant with the greater seniority is not accepted, the appointment shall go to the applicant with the next highest seniority, subject to the Housing Division's authority to reject qualified applicants under the conditions set forth herein.

VII. It is further ordered that the defendants shall keep and maintain intact all records required or necessary to be kept hereunder available for inspection and copying as may be ordered by a Court.

VIII. It is further ordered that the defendants shall post a notice in at least three prominent places within the Housing Division stating that (1) the Housing Division of the Department of Economic Development has been prevented by the United States District Court for the District of Columbia from engaging in any employment practices for the purpose or with the effect of discriminating against any employee or applicants or potential applicants for employment on the ground of race or color, and (2) that a copy of the Order and Final Judgment of the Court is available in a named office of the Housing Division for inspection and copying by any person.

IX. It is further ordered that plaintiffs' counsel may make application for reasonable attorney's fees and costs incurred in this proceeding.

X. This Order and Final Judgment shall be in full force and effect for a period of three years commencing April 1, 1973; provided, however, that the injunction specified in paragraph I shall be immediately effective and permanent, as stated.

XI. The parties, or either of them, may make application to the U. S. District Court for the District of Columbia at any time to modify, interpret or enforce the Order or any part hereof.

On Application for Costs and Fees

This matter is before the Court on the Application of Plaintiffs' Counsel for an Allowance of Costs and Reasonable Attorney's Fees and defendants' opposition thereto. This case involved a favorable resolution of a class action claim that an agency of the city was discriminating on the basis of race against them in their employment opportunities.

■■ It is well within the long established equity power of this Court to award the parties reimbursement for attorney fees and costs of litigation. Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). Here such an award in addition to out of pocket costs already awarded by the Court of Appeals covering the appeal will serve the national policy embodied in the Constitution and statutes against racial discrimination in public employment, and reward plaintiffs for their vindication of that high public purpose through the broad equitable and damage relief obtained. See Lee v. Southern Home Sites Corp., 444 F.2d 143 (5th Cir. 1971). Indeed the damages awarded would be meaningless if consumed to pay for lawyers necessary to vindicate the underlying rights that required the damage award.

Moreover, this case in particular necessitates the awarding of costs because of the Mayor's decision ignoring the administrative findings and recommendations was "unreasonable, obdurate obstinacy," and necessitated the institution of this suit. See Bradley v. School Bd., 472 F.2d 318 (4th Cir. 1972). This

court, in its Memorandum Opinion (p. 942) stated: "there was no basis in the evidence upon which the Mayor could reject the basic finding of blatant and continuous racial discrimination." And the Court of Appeals' opinion made the same point:

"We need not dwell at length on the discriminatory practices alleged to have occurred in the Housing Division. Suffice it to say that the record amply demonstrates that racial discrimination was serious and long-standing, often subtle, yet always pervasive. Indeed, the Commissioner and the Division have conceded that prior to 1968 racial discrimination in the Division was rampant." 153 U.S. App.D.C. 298, at 300, 472 F.2d 1373 at 1375 (decided Dec. 29, 1972).

Accordingly, the Application of Plaintiffs' Counsel for an Allowance of Costs and Reasonable Attorney's Fees shall be and hereby is granted in the following amounts:

1) Attorney's Fees—$32,500.00
2) Reproduction costs and other disbursements—$196.42.

So ordered.

