William BOND et al., etc., Plaintiffs-Appellants,

v.

Alton WHITE et al., etc., Defendants-Appellees.

UNITED STATES of America, Plaintiff,

v.

TWIGGS COUNTY GEORGIA et al., etc., Defendants.

No. 74–1973.

United States Court of Appeals, Fifth Circuit.

March 7, 1975.

John R. Myer, Elizabeth R. Rindskopf, Atlanta, Ga., Jack Greenberg, New York City, for plaintiffs-appellants.

George C. Grant, Macon, Ga., Rabun Faulk, Jeffersonville, Ga., for defendants-appellees.

William J. Schloth, U. S. Atty., Macon, Ga., David L. Norman, Asst. Atty. Gen., Jerry E. Keith, Atty., Civil Rights Div., Voting & Public Accommodations, Dept. of Justice, Washington, D. C., for United States.

Before THORNBERRY, COLEMAN and ROSENN,* Circuit Judges.

THORNBERRY, Circuit Judge:

A 1971 Georgia statute changed the election procedures in Twiggs County, Georgia. Ga.Laws 1971, p. 3546. The statute changed the county commissioner elections from a district basis to an at-large basis. On July 5, 1972 Twiggs County officials submitted the 1971 Act to the United States Attorney General for approval in accordance with § 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c.[1] The Attorney General filed

---

* Of the Third Circuit, sitting by designation.

1. § 1973c.

"Whenever a State or political subdivision with respect to which the prohibitions set forth in section 1973b(a) of this title based upon determinations made under the first sentence of section 1973b(b) of this title are in effect shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964, or whenever a State or political subdivision with respect to which the prohibitions set forth in section 1973b(a) of this title based upon determinations made under the second sentence of section 1973b(b) of this title are in effect shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1968, such State or subdivision may institute an action in the United States District Court for the District of Columbia for a declaratory judgment that such qualifica-

written objections to the Twiggs County election plan on August 7, 1972, but Twiggs County's August 8, 1972 primary election was conducted under the revised procedures. On November 6, 1972 five black residents and registered voters of Twiggs County, Georgia filed this action seeking a declaration that the 1971 statute was invalid, and an injunction to prevent Twiggs County from conducting the general election under its procedures. The district court orally denied the temporary restraining order. On January 24, 1973 the United States also challenged the Twiggs County election procedures. Chief Judge Brown ordered the United States' suit consolidated with Bond's, and a three-judge district court held a hearing on the two cases on January 30, 1973.

After the hearing, the three-judge district court entered a partial consent order on January 31, 1973. That order found the 1971 Georgia statute invalid, enjoined implementation of the at-large election system without compliance with Section 5,[2] ordered new county commissioner elections in 1974, and reserved the question of the proper procedures for the 1974 elections. On October 29, 1973 the three-judge district court determined that the only issue remaining was the proper procedure to be used for conducting the 1974 and subsequent county commissioner elections. The three-judge court determined that a single judge district court could properly resolve that

question and remanded the entire case to the initiating judge for further handling.

On January 7, 1974 the single-judge district court entered a final order requiring Twiggs County election officials to hold the 1974 general election on a district rather than a county wide basis. The district court then went on to consider Bond's request for attorneys' fees. The district judge denied the request for attorneys' fees finding that "this is not a statutory scheme that depends solely on enforcement by private citizens and that, therefore, contemplates the award of attorneys' fees to successful litigants to reimburse them for carrying their congressionally imposed enforcement burden." (A. 57).

Bond's appeal from the district court's refusal to award attorneys' fees presents two questions: whether the single-judge district court had jurisdiction to rule on the attorneys' fees question; and whether the court properly decided that question. We hold that the district court had jurisdiction and that attorneys' fees should have been awarded in this case. Therefore, we reverse and remand to the district court to determine the reasonable fee.

## JURISDICTION OF THE SINGLE–JUDGE DISTRICT COURT

The three-judge court was convened under Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, rather than under

tion, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, and unless and until the court enters such judgment no person shall be denied the right to vote for failure to comply with such qualification, prerequisite, standard, practice, or procedure: *Provided,* That such qualification, prerequisite, standard, practice, or procedure may be enforced without such proceeding if the qualification, prerequisite, standard, practice, or procedure has been submitted by the chief legal officer or other appropriate official of such State or subdivision to the Attorney General and the Attorney General has not interposed an objection within sixty days after such submission, except that neither the Attorney General's failure to object nor a declaratory judgment entered under this section

shall bar a subsequent action to enjoin enforcement of such qualification, prerequisite, standard, practice, or procedure. Any action under this section shall be heard and determined by a court of three judges in accordance with the provisions of section 2284 of Title 28 and any appeal shall lie to the Supreme Court."

It has been determined that the prohibitions of the Act apply to the State of Georgia.

2. The court's order properly recognized that Twiggs County officials could implement election changes if the United States Attorney General did not object within 60 days after submission, or if the officials successfully sought a declaratory judgment of validity from the District Court for the District of Columbia.

the Three-Judge Court Act, 28 U.S.C. § 2281 et seq. Thus we focus primarily on the congressional intent in enacting Section 5.

The three-judge district court's October 29, 1973 order effectively determined the Section 5 controversy. The January 31, 1973 and the October 29, 1973 orders taken together hold that White et al. had violated Section 5 when they implemented the new procedures. Once the three-judge district court made that determination, it fulfilled the congressional intent behind Section 5's three-judge court provision.

The Voting Rights Act of 1965 contained sweeping and innovative provisions designed to "banish the blight of racial discrimination in voting . . ." South Carolina v. Katzenbach, 383 U.S. 301, 308, 86 S.Ct. 803, 808, 15 L.Ed.2d 769 (1966). The statute reflects congressional recognition of the problems of federalism that the legislation posed. "In drafting § 5, Congress apparently concluded that if the governing authorities of a State differ with the Attorney General of the United States concerning the purpose or effect of a change in voting procedures, it is inappropriate to have that difference resolved by a single district judge. The clash between federal and state power and the potential disruption to state government are apparent. There is no less a clash and potential for disruption when a disagreement concerns whether a state enactment is subject to § 5. The result of both suits can be an injunction prohibiting the State from enforcing its election laws." Allen v. State Board of Elections, 393 U.S. 544, 562–63, 89 S.Ct. 817, 830, 22 L.Ed.2d 1 (1969). Congress did not explicitly provide for a private cause of action under Section 5. But in *Allen* the Court implied a private right of action,

noting that "[t]he guarantee of § 5 that no person shall be denied the right to vote for failure to comply with an unapproved new enactment subject to § 5, might well prove an empty promise unless the private citizen were allowed to seek judicial enforcement of the prohibition." *Id.* at 557, 89 S.Ct. at 827. The Court found that the potential disruption of state election procedure warranted applying the three-judge court requirement to private suits under Section 5.[3] *Id.* at 560–63, 89 S.Ct. 817.

■ But once the three-judge district court has determined that a violation of § 5 has occurred, and has issued the injunction, the congressional solution to the potentially disruptive effects of the federal-state conflict has been implemented. Under those circumstances, we think it proper for a three-judge district court constituted under § 5 to then remand the case to a single-judge district court to determine matters ancillary to the main proceeding. This procedural alternative minimizes the burden that the three-judge court requirement imposes on the federal judiciary.

We note that the Supreme Court has approved a similar practice under 28 U.S.C. § 2281. In Public Service Comm. v. Brashear Freight Lines, 312 U.S. 621, 61 S.Ct. 784, 85 L.Ed. 1083 (1941), seventy-six interstate common carriers challenged the constitutionality of the Missouri Bus and Truck Law. A three-judge district court heard the constitutional claim, and upheld the statute. The state officials counterclaimed for damages. The Supreme Court held that the damages action should have been heard by a single district judge, rather than the three-judge court. 312 U.S. at 624–25, 61 S.Ct. 784. The Court noted that once the constitutional claim has been determined, then the congressional

---

**3.** § 14(b) of the Act, 42 U.S.C. § 1973*l*, gives the District Court for the District of Columbia exclusive jurisdiction to issue a declaratory judgment under § 5. The Supreme Court held this was a valid exercise of congressional power under U.S.Const. Art. III, § 1 to "ordain and establish" inferior federal tribunals. South Carolina v. Katzenbach, 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966). But in *Allen*, the Court held that the § 14(b) restrictions do not apply to private suits under § 5. Thus, the action must be heard on the merits by a three-judge district court, but that court may be convened in any district where venue is proper. 393 U.S. at 557–563, 89 S.Ct. 817.

purpose in requiring a three-judge court had been satisfied. The *Brashear* case spawned an exception to § 2281 three-judge court jurisdiction, allowing a single-judge court to enforce the judgment of a three-judge court. *See* Hamilton v. Nakai, 453 F.2d 152 (2d Cir. 1972), cert. denied, 406 U.S. 945, 92 S.Ct. 2044, 32 L.Ed.2d 332; W. Barron & Holtzoff, Federal Practice and Procedure, (Wright, Ed.) § 52. The three-judge district court in this case performed its function under § 5 of the Voting Rights Act when it determined that there had been a violation of § 5. It then properly exercised its discretion when it remanded the case to the district court for enforcement of its decree, and for determination of the attorneys' fees question. This disposition effectuates congressional policy under § 5 yet minimizes the burden on the federal judiciary. *See* Gonzalez v. Automatic Employees Credit Union, 419 U.S. 90, 95 S.Ct. 289, 42 L.Ed.2d 249 (1974).

## DENIAL OF ATTORNEYS' FEES

■ An award of attorneys' fees is the exception rather than the rule in the federal judicial system. Under the so-called "American Rule" attorneys' fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing for them. F. D. Rich Co. v. United States Industrial Lumber Co., 417 U.S. 116, 124, 94 S.Ct. 2157, 2163, 40 L.Ed.2d 703 (1974); Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). Three exceptions to the American Rule currently exist: (1) the "obdurate, obstinate" exception, Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); Fairley v. Patterson, 493 F.2d 598 (5th Cir. 1974); (2) the common fund exception, Hall v. Cole, *supra*; Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); and (3) the private attorneys general theory, Fairley v. Patterson, *supra*; Lee v. Southern Home Sites Corp., 444 F.2d 143 (5th Cir. 1971).

The district court considered the applicability of the private attorneys general exception in rejecting Bond's claim for attorneys' fees.

Plaintiffs also pray for the award of attorneys' fees citing cases including Lee v. Southern Home Sites Corp., 444 F.2d 143 (5th Cir. 1971). As the presence of the United States as a party plaintiff demonstrates this is not a statutory scheme that depends solely on enforcement by private citizens and that therefore contemplates the award of attorneys' fees to successful litigants to reimburse them for carrying their congressionally imposed enforcement burden. The *Lee* case, as well as other similar cited cases, does not therefore demand or permit attorneys' fees to be awarded in this case.

The Supreme Court's decision in Allen v. State Bd. of Elections, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969) mandates a different conclusion.

In *Allen* the Supreme Court specifically addressed the question of private enforcement of the Voting Rights Act of 1965. In implying a private right of action under § 5, the Court stated:

The achievement of the Act's laudable goal could be severely hampered, however, if each citizen were required to depend solely on litigation instituted at the discretion of the Attorney General. For example, the provisions of the Act extend to States and the *subdivisions thereof.* The Attorney General has a limited staff and often might be unable to uncover quickly new regulations and enactments passed at the varying levels of state government. It is consistent with the broad purpose of the Act to allow the individual citizen standing to insure that his city or county government complies with the § 5 approval requirements.

393 U.S. at 556–57, 89 S.Ct. at 827. The Court further stated:

The guarantee of § 5 that no person shall be denied the right to vote for failure to comply with an unapproved new enactment subject to § 5, might well prove an empty promise unless

the private citizen were allowed to seek judicial enforcement of the prohibition.

*Id.* at 557, 89 S.Ct. at 827. The district court's reasoning implies that in the absence of a specific provision for attorneys' fees, a statutory scheme must depend *solely* on private enforcement for the private attorneys general exception to apply. The statutory schemes where courts have applied the private attorneys general concept have provisions for governmental enforcement, but courts have concluded that private enforcement is necessary to effectuate the congressional purpose. *See* J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) (Securities Exchange Act of 1934); Burke v. Compania Mexicana de Aviacion, 433 F.2d 1031 (9th Cir. 1970) (Railway Labor Act); Note, Implying Civil Remedies from Federal Regulatory Statutes, 77 Harv.L.Rev. 285 (1963).

■ The considerations that the Supreme Court relied upon to imply a private right of action in *Allen* are also relevant in determining the propriety of an award of attorneys' fees under the private attorneys general exception. There is a need for private enforcement of Section 5, and awarding attorneys' fees encourages private enforcement actions. This is particularly vital here since damages are not available. *See* Lee v. Southern Home Sites Corp., 444 F.2d 143, 147–48 (5th Cir. 1971).

Nor do we reach a different conclusion because the Attorney General exercised his discretion and intervened in this particular suit. The Act's enforcement provisions state that the Attorney General "may institute . . . an action" or "may . . . file . . . an application for an order". 42 U.S.C. §§ 1973j(d) & (e). The plaintiffs below challenged the Twiggs County procedures over two months before the Attorney General decided to institute suit. They sought to enjoin an election that was clearly invalid since the Attorney General had objected to the Twiggs County procedure. *See* 42 U.S.C. § 1973c. Depriving them of attorneys' fees in this case merely because the Attorney General decided to file suit just before the hearing on Bond's claim would certainly discourage private enforcement actions in the future.

The appellees contend that attorneys' fees should be denied in this case because they did not seriously contest the merits of Bond's claim. We cannot agree. Any cooperation on the part of the appellees tends to reduce the amount of work required to prove a § 5 violation, thereby reducing the amount of the proper award.

Sierra Club v. Lynn, 502 F.2d 43 (5th Cir. 1974) is not inconsistent with the result we reach here. In that case, the Sierra Club sued the Secretary of the Department of Housing and Urban Development and the developers of the San Antonio Ranch project, charging violations of the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 et seq. The district court there awarded attorneys' fees, even though on the merits it exonerated the developer from any malfeasance. The court of appeals reversed, holding that the award of attorneys' fees was improper where the developer had not breached any legal duty. 502 F.2d at 64–66. In this case, Bond demonstrated that White and the other defendants below had not complied with their legal duties under the Voting Rights Act of 1965. That breach of duty coupled with the need for private enforcement of Section 5 justifies awarding attorneys' fees here. Therefore we reverse and remand this case to the district court to determine the proper award.

Reversed and remanded.