Hoover WHITE, et al., Plaintiffs,

v.

The STATE OF ALABAMA; James Bennett in his official capacity as Secretary of State for the State of Alabama, Defendants,

United States of America, Amicus Curiae.

Civ. A. No. 94-T-094-N.

United States District Court,
M.D. Alabama,
Northern Division.

May 11, 1994.

Terry G. Davis, Terry G. Davis, P.C.; Solomon S. Seay, Jr., Montgomery, AL, and Samuel H. Heldman, and Joe R. Whatley, Jr., Cooper, Mitch, Crawford, Kuydendall & Whatley, Birmingham, AL, for plaintiffs.

Algert S. Agricola, Jr., Montgomery, AL, for intervenor-plaintiff.

Robert Marc Givhan, Asst. Atty. Gen.; Donald V. Watkins, Donald V. Watkins, P.C., Montgomery, AL, and Jonathan C. Rose, Jones, Day, Reavis & Pogue, Washington, DC, for defendants.

Steven H. Rosenbaum, James P. Turner, U.S. Dept. of Justice, Civ. Rights Div., Voting Section, Mark A. Posner, and Matthew G. Olsen, U.S. Dept. of Justice, Civ. Rights Div., Washington, DC, for amicus.

Before DUBINA, Circuit Judge, THOMPSON, Chief District Judge, and DE MENT, District Judge.

### MEMORANDUM OPINION

DUBINA, Circuit Judge:

## I. BACKGROUND

■ This three-judge court was convened in accordance with Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, for the purpose of deciding a lawsuit that challenges the method of electing appellate judges in the State of Alabama. The plaintiffs—a class of African–American resident citizens and electors of the State of Alabama—filed suit alleging that the expansion of the Alabama Supreme Court in 1969 and the creation and expansion of the Courts of Civil and Criminal Appeals in 1969, 1971, and 1993, have never been precleared by the United States Department of Justice (the "Justice Department"), and thus are in violation of Section 5 of the Voting Rights Act. In addition, the plaintiffs allege that vote dilution inherent in the structure of Alabama's judicial elections prevents them from electing candidates of their choice; thus, they claim that the method of electing judges in the State of Alabama also violates Section 2 of the Voting Rights Act.

The parties devised a settlement agreement which purports to settle all of the claims alleged in the plaintiffs' complaint. The parties submitted the agreement, along with the challenged legislative acts, to the Attorney General of the United States (the "Attorney General") for preclearance. The Attorney General refused to preclear the legislative acts and interposed an objection to the changes in the Alabama Supreme Court and the Courts of Appeals. However, the Attorney General has precleared the settlement agreement. Therefore, the Justice Department indicated to this three-judge court that if the settlement agreement is approved, the plaintiffs' Section 5 claims are waived and the objection will be withdrawn.

■ There is presently pending before us a motion to stay proceedings before the three-judge court. In deciding this motion, our focus is on one narrow issue: whether the settlement agreement should be considered by a single judge or by this three-judge court. We believe that the law is clear on this point; the three-judge court does not have jurisdiction to consider the validity of the settlement agreement. Therefore, with the understanding that this court will need to reconvene immediately in the event that the settlement agreement is not approved, we are persuaded that the motion is due to be granted.

## II. DISCUSSION

■ Under Section 5, the issues to be decided by a three-judge court are strictly limited. *City of Lockhart v. United States,* 460 U.S. 125, 129 n. 3, 103 S.Ct. 998, 1001, 74 L.Ed.2d 863 (1983); *United States v. Board of Supervisors of Warren County, Miss.,* 429 U.S. 642, 645–47, 97 S.Ct. 833, 834–35, 51 L.Ed.2d 106 (1977) (per curiam); *Campos v. City of Houston,* 968 F.2d 446, 452 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 971, 122 L.Ed.2d 126 (1993). These issues are: (1) whether a voting change is covered under Section 5; (2) whether it has been precleared; and (3) if a covered change has not been precleared, what remedy is appropriate. *McCain v. Lybrand,* 465 U.S. 236, 250 n. 17, 104 S.Ct. 1037, 1046 n. 17, 79 L.Ed.2d 271 (1984); *Lockhart,* 460 U.S. at 129 n. 3, 103 S.Ct. at 1001 n. 3; *Brooks v. State Bd. of Elections,* 838 F.Supp. 601, 607–

608 (S.D.Ga.1993) (*Brooks III*). It is the responsibility of a single-judge court acting pursuant to Section 2 of the Voting Rights Act to address allegations of substantive voting rights violations and to fashion any necessary relief.

Three-judge Section 5 courts consistently defer to single-judge courts to develop and implement a remedy for a substantive violation, or to review a consent agreement based on allegations of a substantive violation. For example, in *Brooks III,* a closely analogous case, the three-judge Section 5 court held that it "lack[ed] the authority to remedy substantive voting rights violations by sanctioning and imposing a new voting scheme." *Brooks III,* 838 F.Supp. at 608.

> All that the three-judge Section 5 court legally can do at this point is monitor and, if necessary, modify the temporary equitable remedy we imposed. Consequently, the validity and propriety of the proposed consent decree must be considered in the context of plaintiff's pending Section 2 action, and claims under Section 2 properly come before the single-judge district court.

*Id.* Thus, the three-judge court severed the Section 2 portion of the case so that the single-judge court could consider the validity of a pending proposed consent decree. The three-judge court stated that it would "continue to perform our carefully circumscribed role of providing any interim equitable relief in accordance with Section 5." *Id.* at 608. *See also Edge v. Sumter County School Dist.,* 541 F.Supp. 55, 57 (M.D.Ga.1981), *aff'd mem.,* 456 U.S. 1002, 102 S.Ct. 2287, 73 L.Ed.2d 1297 (1982) (three-judge court resolved Section 5 issues and remanded the case to a single-judge court to supervise development of a legally enforceable election plan); *United States v. City of Houston,* 800 F.Supp. 504, 508 (S.D.Tex.1992) (Section 5 court stated that the single-judge court hearing a parallel Section 2 claim had jurisdiction to approve a settlement); *Bond v. White,* 508 F.2d 1397, 1400–1401 (5th Cir.1975) (held that the three-judge court, after deciding Section 5 issues, properly remanded ancillary matters to the single-judge court); *Pitts v. Carter,* 380 F.Supp. 4, 8 (N.D.Ga.1974) (three-judge court enjoined implementation of unprecleared voting changes and remanded to single-judge court the question of how to conduct future elections).

In the present case, the review of the validity and propriety of the proposed settlement is beyond the role of the three-judge court because the proposed settlement is essentially a Section 2, and not a Section 5, remedy. The proposed settlement purports to remedy substantive Section 2 claims and therefore, consistent with the cases cited above, the three-judge court should defer to the single-judge court for review of the proposed settlement.

We are aware that the proposed settlement contains provisions that compromise the Section 5 rights of the plaintiff class. Specifically, plaintiffs agreed to waive their right to seek preliminary injunctive relief under Section 5 for the 1994 election of appellate judgeship positions that have not received preclearance. This waiver is unlikely to have any real impact because we already resolved the question of preliminary injunctive relief with respect to the 1994 primary election.

Moreover, the Attorney General precleared the proposed settlement. This preclearance approval of the proposed judgment is final and unreviewable. *Morris v. Gressette,* 432 U.S. 491, 504–506, 97 S.Ct. 2411, 2420–21, 53 L.Ed.2d 506 (1977). In addition, if the proposed settlement is approved, the Attorney General is prepared to withdraw her objection to the legislatively enacted changes, rendering moot the question of Section 5 injunctive relief. Thus, the need for the three-judge court to review the provisions in the proposed settlement that relate to the plaintiffs' Section 5 waiver is contingent upon the review of the other provisions by the single-judge court. We agree with the plaintiffs, the defendants, and the United States (as *amicus curiae*), that in this unique case, if review by a three-judge court proves necessary, it can only take place after the single-judge court completes its consideration of the proposed settlement. Therefore, in light of the Attorney General's preclearance of the proposed settlement there is, at this time, no further role for the three-judge court under Section 5.

The only party to this case which requests that the three-judge court consider the proposed settlement, the intervenors Ralph E. Bradford, et al. (the "Bradford plaintiffs"), present three arguments in support of their position. We will address each of these arguments in turn.

First, the Bradford plaintiffs argue that the Section 2 and Section 5 issues[1] are so "inextricably intertwined" that any consideration of the settlement will necessarily include consideration of the Section 5 issues; thus, they argue that the three-judge court must rule on the settlement. We disagree. Preclearance of the proposed settlement effectively moots the Section 5 claims. Of course, if the settlement is not approved by the single-judge court, this three-judge panel will be forced to reconvene in order to consider the then-viable Section 5 claims. At this stage in the proceedings, however, the single-judge court need only consider Section 2 issues and constitutional issues in order to approve or disapprove the proposed settlement; no Section 5 issues are involved.

Second, the Bradford plaintiffs argue that the three-judge court should extend its pendent jurisdiction to consider the propriety of the proposed settlement. The Bradford plaintiffs point to several cases for the proposition that once a three-judge court is impaneled, it has jurisdiction to hear any ancillary matter. *Lake v. State Bd. of Elections of North Carolina*, 798 F.Supp. 1199 (M.D.N.C. 1992); *United States v. Georgia Pub. Serv. Comm'n*, 371 U.S. 285, 287–88, 83 S.Ct. 397, 398–99, 9 L.Ed.2d 317 (1963); *Weintraub v. Hanrahan*, 435 F.2d 461, 463 (7th Cir.1970). The three-judge panel in *Lake* relied on *Georgia Pub. Serv. Comm'n* in deciding to extend its pendent jurisdiction to Due Process and Fourteenth Amendment claims in addition to the Section 5 claim for which it was impaneled. We do not find *Georgia Pub. Serv. Comm'n* dispositive or persuasive since it was decided before the Voting Rights Act was passed. Since the enactment of the Voting Rights Act, the Supreme Court has

clearly established the limited jurisdiction of three-judge Section 5 courts. *See* cases cited *supra*. Therefore, we decline to follow *Lake*, and refuse to extend our pendent jurisdiction to the Section 2 issues presented in this case.

Third, the Bradford plaintiffs argue that if there is any ambiguity regarding our jurisdiction in this matter that we should "err on the side of caution" and submit the proposed settlement to the three-judge court. We find no ambiguity in the law; our jurisdiction is very clearly limited. Thus, it would not be prudent for us to go beyond our strictly defined jurisdiction in order to consider the validity and propriety of the proposed settlement.

For all of the foregoing reasons, it is the opinion of this court that the motion to stay proceedings before the three-judge court is due to be granted, the Section 2 claims are due to be severed from the Section 5 claims, and the constitutional validity of the proposed settlement is due to be referred to the single-judge court for disposition.

---

1. Section 5 involves the mechanics of voting, while Section 2 involves the fundamental right to vote for elected officials. Considered virtually companion sections, they operate in tandem to prohibit discriminatory practices in voting and

contain almost identical language as to their respective scopes. *Chisom v. Edwards*, 839 F.2d 1056, 1064 (5th Cir.1988), *cert. denied*, 488 U.S. 955, 109 S.Ct. 390, 102 L.Ed.2d 379 (1989).