UNITED STATES *v.* BOARD OF SUPERVISORS OF WARREN COUNTY, MISSISSIPPI, ET AL.

No. 76–489.   Decided February 22, 1977

PER CURIAM.

The motion of Eddie Thomas et al. for leave to file a brief, as *amici curiae,* is granted.

In November 1970, the Board of Supervisors of Warren County, Miss., submitted a county redistricting plan to the Attorney General for his approval under § 5 of the Voting Rights Act of 1965.[1]   The new plan was to replace a

---

[1] Section 5 requires, in relevant part, that whenever a State or political subdivision covered by the Act seeks to administer "any voting qualifica-

plan in effect since 1929. After requesting and receiving additional information, the Attorney General entered an objection to the plan. Despite this objection, the Board held elections in 1971 pursuant to the 1970 plan. After the elections, the Board sought reconsideration of the objection. The Attorney General refused to withdraw the objection and in 1973 filed a complaint, pursuant to § 5, in the District Court for the Southern District of Mississippi. The complaint alleged that the Attorney General's objection to the 1970 redistricting plan rendered that plan unenforceable under § 5, and that the election districts in effect prior to the 1970 redistricting were malapportioned under the Fourteenth Amendment. Three forms of relief were requested: (1) a declaration that implementation of the 1970 plan violated § 5; (2) an injunction against implementing the 1970 plan or any other new plan until there had been compliance with one

tion or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964," it may institute an action in the United States District Court for the District of Columbia for a declaratory judgment that "such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color." Until the District of Columbia court enters a declaratory judgment to that effect, no person may be denied the right to vote for failure to comply with the new practice or procedure. As an alternative to the requirement of a declaratory judgment, § 5 permits the State or political subdivision to enforce a new voting procedure if the procedure has been first submitted to the Attorney General of the United States and the Attorney General has not, within 60 days, interposed an objection to the proposed change. All actions under § 5 are required to be heard by a three-judge court. Voting Rights Act of 1965, § 5, 79 Stat. 439, 42 U. S. C. § 1973c.

There is no dispute in this case that Warren County is a political subdivision covered by the Act, that realignment of election districts is a voting practice or procedure, and that Warren County has not instituted a declaratory judgment action in the District Court for the District of Columbia.

of the two procedures required by § 5; and (3) an order that a new redistricting plan be developed and implemented after being found acceptable under § 5.

A properly convened three-judge court granted the Government's motion for summary judgment. In its later order implementing that judgment, the court found that because the upcoming 1975 County elections could not be held as scheduled "without abridging rights guaranteed by the Fourteenth and Fifteenth Amendments to the Constitution," the elections had to be stayed subject to compliance with the procedure set out in the court's order. The order provided that the County submit a redistricting plan to the Attorney General for § 5 review and, if no objection were interposed, that elections then be held in accordance with a stipulated schedule. In the event that the County submitted no plan by a stated deadline, or that the Attorney General objected to a submitted plan, or that a submitted plan contained infirmities with respect to the one-person-one-vote requirements of the Fourteenth Amendment, the court would consider plans prepared by both parties and adopt an appropriate redistricting plan to be used in elections held according to the ordered schedule.

The County then informally submitted two plans to the Attorney General for comment and the Attorney General indicated his reservations concerning the validity of the plans. This impasse continued until the deadline in the court's order, after which time the court directed the parties to file their proposed plans for its consideration. After a hearing, the court adopted one of the plans prepared by the County despite the fact that the plan had not been approved pursuant to § 5 procedures. The court found that the adopted plan "neither dilutes black voting strength nor is deficient in one-man, one-vote considerations." It ordered that the county's districts be reorganized according to the plan and that elections be held. The United States appealed. This

Court has jurisdiction under 42 U. S. C. § 1973c and 28 U. S. C. § 1253.

Section 5 provides for two alternative methods by which a State or political subdivision covered by the Act may satisfy the requirement of federal scrutiny of changes in voting procedures. First, the State or political subdivision may institute an action in the District Court for the District of Columbia for a declaratory judgment that the proposed change does not have the purpose or effect of abridging the right to vote on account of race; second, it may submit the proposed change to the Attorney General. No new voting practice or procedure may be enforced unless the State or political subdivision has succeeded in its declaratory judgment action or the Attorney General has declined to object to a proposal submitted to him. See n. 1, *supra.* Attempts to enforce changes that have not been subjected to § 5 scrutiny may be enjoined by any three-judge district court in a suit brought by a voter, *Allen* v. *State Board of Elections,* 393 U. S. 544, 554–563 (1969), or by the Attorney General on behalf of the United States, Voting Rights Act of 1965, §§ 12 (d), (f), 42 U. S. C. §§ 1973j (d), (f).

In *Perkins* v. *Matthews,* 400 U. S. 379 (1971), this Court held that the separate procedures of § 5 imposed a limitation on the determinations that may be made by district courts entertaining actions brought to enjoin § 5 violations:

"What is foreclosed to such district court is what Congress expressly reserved for consideration by the District Court for the District of Columbia or the Attorney General—the determination whether a covered change does or does not have the purpose or effect 'of denying or abridging the right to vote on account of race or color.'" 400 U. S., at 385.

Adhering to *Allen,* the Court held that the inquiry of a local district court in a § 5 action against a State or political subdivision is "limited to the determination whether 'a [vot-

ing] requirement is covered by § 5, but has not been subjected to the required federal scrutiny.' " 400 U. S., at 383, quoting *Allen* v. *State Board of Elections, supra,* at 561. This holding was subsequently reaffirmed in *Connor* v. *Waller,* 421 U. S. 656 (1975).

·  *Allen, Perkins,* and *Connor* involved private suits by voters claiming noncompliance with § 5 procedures; we now hold that the same limitations on the inquiry of local district courts apply in § 5 actions brought by the Attorney General. The limitation inheres in Congress' determination that only the District Court for the District of Columbia has jurisdiction to consider the issue of whether a proposed change actually discriminates on account of race and that other district courts may consider § 5 "coverage" questions. See *Allen* v. *State Board of Elections, supra,* at 558–559.

The District Court in this case twice exceeded the permissible scope of its § 5 inquiry. In the order implementing its summary judgment for the United States, the court apparently decided that the 1970 redistricting plan did not comply with the Fifteenth Amendment.[2] In its later Findings of Fact and Conclusions of Law approving a plan submitted to the court by Warren County, the court "proceeded on the premise that if . . . Fifteenth Amendment protections had not been accorded by any plan proposed, the court could have instituted its own plan," and then determined that the County plan "will not lessen the opportunity of black citizens of Warren County to participate in the political process and elect officials of their choice." In both instances the court

---

[2] The court's order enjoined the holding of the 1975 elections because they could not be held without abridging Fourteenth and Fifteenth Amendment rights. The court did not elaborate, but it appears to have held that Fourteenth Amendment, one-person-one-vote rights would be abridged if the election were conducted under the old districting plan and the Fifteenth Amendment rights of black voters would be violated if the 1970 redistricting plan were used.

below erred in deciding the questions of constitutional law;[3] it should have determined only whether Warren County could be enjoined from holding elections under a new redistricting plan because such plan had not been cleared under § 5. Accordingly, the judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[3] Although the record is not clear, the source of the confusion concerning the power of the District Court in this case seems to have arisen from the fact that the Attorney General did not seek merely to enjoin implementation of the 1970 redistricting plan, but also asked the court to enjoin any election until the County had been redistricted in a manner that both met the requirements of the Voting Rights Act and eliminated the malapportionment of the old districts. The malapportionment of the old plan could not, however, be made the subject of a Government suit brought under § 5. The section is addressed only to voting procedures that were not in effect on November 1, 1964. *Beer* v. *United States,* 425 U. S. 130, 138–139 (1976). The allegedly malapportioned districts had existed long before 1964 and were, therefore, not properly before the court in the § 5 action.