UNITED STATES of America, Plaintiff,

v.

LOUISVILLE MUNICIPAL SEPARATE SCHOOL DISTRICT BOARD OF TRUSTEES, et al., Defendants.

No. EC81–318–LS–P.

United States District Court,
N.D. Mississippi, E.D.

Feb. 22, 1983.

Glen H. Davidson, U.S. Atty., Oxford, Miss., Ellen M. Weber, Civil Rights Division Dept. of Justice, Washington, D.C., for plaintiff.

Joshua Jerome Wiener, Jackson, Miss., Laurel G. Weir, Philadelphia, Miss., for defendant.

James Mayo, Louisville, Miss., for former trustees.

Before E. GRADY JOLLY, Circuit Judge, and SENTER and KEADY, District Judges.

## MEMORANDUM OPINION

PER CURIAM.

### I.

This dispute has a long procedural and decisional history. *See Hathorn v. Lovorn,* —— U.S. ——, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1982); *Carter v. Luke,* 399 So.2d 1356 (Miss.1981); *Lovorn v. Hathorn,* 365 So.2d 947 (Miss.1979). *See generally* Comment, Mississippi and The Voting Rights Act: 1965–1982, 52 MISS.L.J. 801, 873–75 (1982) (brief discussion of the procedural history of *Hathorn v. Lovorn*). We will not attempt to track the history of the related proceedings, but rather refer the reader to the United States Supreme Court case cited above.

Suffice it to say that the instant case comes before us on complaint filed by the United States to enforce Section 5 of the Voting Rights Act of 1965 [1] which requires preclearance of changes in election procedures, in this instance the method of electing the Board of Trustees of the Louisville Municipal Separate School District. This suit was filed December 1, 1981, initially seeking to enjoin the scheduled election of trustees. The district court denied the injunctive relief [2] and the election was held December 5, 1981. [3]

In June of 1982, the United States Supreme Court decided *Hathorn v. Lovorn,* —— U.S. ——, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1982), [4] which made clear that the failure to preclear the December 1981 election with the Attorney General was a violation of Section 5 of the Voting Rights Act. Rather than remand the case to the Mississippi State Supreme Court from whence it came, the United States Supreme Court took note of the fact that the instant case was pending in the Northern District of Mississippi and directed us to fashion a remedy for the violation.

### II.

The controversy precipitating this legal battle centered around whether the method of selecting the school board would be changed. The change sought by the initial plaintiffs was from appointment of three members by the Louisville Board of Aldermen with election of two members by county voters, to the method as provided by state statute of election by supervisors' district of each of the five respectively.

---

**1.** 42 U.S.C. § 1973c (1976) requires a state or political subdivision covered under § 4(b), 42 U.S.C. § 1973b (1976), to seek federal approval, or preclearance before implementing "any voting qualification or prerequisite to voting, or standard, practice or procedure with respect to voting" different from that in effect in the state or political subdivision on November 1, 1964.

**2.** The Chancery Court of Winston County and the Supreme Court of the State of Mississippi, as well as the United States Supreme Court, had earlier denied motions filed by local Louisville and Winston County officials to stay the election. *Hathorn v. Lovorn,* —— U.S. ——, 102 S.Ct. 2421, 2425 n. 8, 72 L.Ed.2d 824 (1982).

**3.** After run-off elections, December 19, 1981, the elected members were installed on December 24, 1981, and have been serving since that time.

**4.** The first lawsuit instituted in this imbroglio was filed here in federal court in 1975. This court stayed its proceedings to give the Mississippi courts an opportunity to construe the state statute at issue. The original federal court suit was later dismissed without prejudice. The main battleground has been in the state courts. Commencing in the Chancery Court of Winston County, this suit has proceeded to the Mississippi Supreme Court, back to the chancery court, then to the state supreme court again, next to the United States Supreme Court, the Winston County Chancery Court, and this court contemporaneously. It has finally, it is to be hoped, found its resting place on our doorsteps where it began its tortuous journey more than seven years ago.

The case was pending in the Chancery Court of Winston County when on March 28, 1980, the Attorney General's designate, Drew S. Days, III, Assistant Attorney General for the Civil Rights Division, issued his letter interposing an objection. His objection was, however, on the basis that the new elections required a majority vote rather than a mere plurality. The plaintiffs were agreeable to plurality elections. The chancery court, however, relying upon the laws of the State of Mississippi, refused to order elections requiring only a plurality, but rather directed that run-off elections be held. On appeal (the second) to the Mississippi Supreme Court, the Chancery Court of Winston County was, in this respect, affirmed. *Carter v. Luke,* 399 So.2d 1356, 1358 (1981). The chancery court had refused, however, to order elections until there had been compliance with Section 5 of the Voting Rights Act. On this issue, the Mississippi Supreme Court reversed the chancery court and ordered that elections be conducted according to the laws of the State of Mississippi. *Carter v. Luke,* 399 So.2d at 1358. The defendants in that case, numerous Louisville and Winston County officials, including the former trustees, applied for certiorari to the United States Supreme Court, which was granted. *Hathorn v. Lovorn,* 454 U.S. 1122, 102 S.Ct. 969, 71 L.Ed.2d 109 (1981).

In the meantime, by order of August 4, 1981, the Chancery Court of Winston County, pursuant to the mandate of the Mississippi State Supreme Court, directed that elections be held on December 5, 1981, and that run-off elections be held on December 19, 1981.

While the Justice Department had notice from August 1981 that elections would be required, it failed to take any steps to enforce Section 5 of the Voting Rights Act until approximately December 1, 1981, when its Complaint and Motion for Preliminary Injunction were filed in the United States District Court for the Northern District of Mississippi.

In November 1981 the defendants, including the former trustees, sought to have the United States Supreme Court enjoin the elections, which it refused to do. *Hathorn v. Lovorn,* 454 U.S. 1070, 102 S.Ct. 623, 70 L.Ed.2d 607 (1981). Taking note of the Supreme Court's refusal to enjoin the election, this court followed suit, denied the Motion for Preliminary Injunction, and allowed the election to proceed.

On December 24, 1981, five new school board members were installed, each having staggered terms expiring on the first Saturday of March 1982 through 1986, respectively.

After the Supreme Court's decision in June 1982, the instant case was reactivated on September 16, 1982, by the former trustees of the school district, who sought injunctive relief to have the present board of trustees removed and have themselves reinstated.[5] This cause, however, comes before us now on the United States' Motion for Summary Judgment, filed November 18, 1982, and the defendants' Motion for Summary Judgment filed December 8, 1982. Both parties agree upon the disposition of the merits of this case; that is, judgment should be entered declaring that the manner of conducting the December 1981 elections violated Section 5 of the Voting Rights Act since they were not precleared nor determined on a plurality basis. The parties disagree, however, on the remedy required under the circumstances presented here.

### III.

■ We grant summary judgment in favor of the United States. Our task in this respect is easy and simple. Section 5 requires preclearance before certain changes in election procedures can be made by the State of Mississippi and all of its

---

5. On October 27, 1982, the district court entered an order substituting the present defendants (the newly elected trustees) in the place of the former trustees. The former trustees are not now parties to this lawsuit. Thus, for the purposes of this opinion and all judgments and orders of the court subsequent hereto, the former trustees will be treated as non-parties and non-participants in this litigation, as indeed they are.

subdivisions, including this school board. 42 U.S.C. § 1973c (1976). *See Dougherty County, Georgia Board of Education v. White*, 439 U.S. 32, 36, 99 S.Ct. 368, 371, 58 L.Ed.2d 269 (1978) (county school boards are "political subdivisions" for purposes of the Voting Rights Act). It does not matter that those changes were mandated by orders of the state court. *Hathorn v. Lovorn*, —— U.S. ——, 102 S.Ct. 2421, 2430, 72 L.Ed.2d 824 (1982). Here the parties are in full agreement, and indeed the United States Supreme Court has held, that preclearance was required in this case and that preclearance did not occur. We are therefore required to hold that the majority-vote requirement of the state's statutes is, in this instance, violative of section 5. Once the Attorney General has interposed an objection to the requirement of run-off elections for this particular school district, the only recourse from the consequences of this determination is by obtaining relief in a declaratory judgment action brought in the United States District Court for the District of Columbia,[6] and this has not been done by either the present or the previous defendant parties. Thus this court does not have the authority to address the question of whether the Attorney General is correct in his conclusion that the majority requirement here is violative of section 5. *Morris v. Gressette*, 432 U.S. 491, 501, 97 S.Ct. 2411, 2418, 53 L.Ed.2d 506 (1977). *See United States v. Warren County Board of Supervisors*, 429 U.S. 642, 645–46, 97 S.Ct. 833, 834–35, 51 L.Ed.2d 106 (1977) (local three-judge court is foreclosed from substantive determination on the purpose or effect of a challenged change). The only real question that this court is called upon to decide, therefore, is the appropriate remedy for this violation.

### IV.

Here we have considered three proposed remedies. Two have been proposed by the plaintiff, United States. One proposal is that we declare the December 1981 elections void and order new elections in each of the five districts with only a plurality requirement for election. Alternatively, the United States suggests that we declare only the December 19 run-off election void and uphold the plurality winners in each of the December 5, 1981 elections.[7]

The defendant school board, acknowledging that the majority requirement must be stricken, suggests that our remedy of plurality-required elections be applied prospectively only, beginning with the March 5, 1983, election, and in every election thereafter as long as our order is in effect.

 We have exercised our discretionary judgment in determining a remedy, *see Whitcomb v. Chavis*, 403 U.S. 124, 161, 91 S.Ct. 1858, 1878, 29 L.Ed.2d 363 (1971); *Jordan v. Winter*, 541 F.Supp. 1135, 1141 (N.D. Miss.1982) (three-judge court), and apply the one that would leave the December 1981 elections undisturbed while requiring all future elections to be conducted by plurality voting without run-off elections. We base our determination upon several factors and considerations disclosed by the record.

First and most importantly, we must acknowledge the history of extensive court participation in, and judicial sanctioning of, the 1981 school trustee elections, since the elections were conducted, not by wilful decision or choice of local officials, but in accordance with mandates issued by the Mississippi Supreme Court and the Winston County Chancery Court, without intervention by federal courts at any level. Indeed, this federal district court, when given an opportunity to enjoin implementation of the

---

**6.** *See Morris v. Gressette*, 432 U.S. 491, 505 n. 21, 97 S.Ct. 2411, 2421 n. 21, 53 L.Ed.2d 506 (1977) (covered jurisdiction retains option of seeking a favorable declaratory judgment from the D.C. District Court after receiving an Attorney General's objection); 46 C.F.R. § 51.43(b)–(c) (1981) (after imposing an objection Attorney General shall notify submitting entity of its

right to seek a reconsideration or a declaratory judgment in the D.C. District Court).

**7.** In voiding the results of the run-off elections we would remove the two members of the present board who were only runners-up on December 5 but who prevailed in the December 19 run-off.

majority-vote requirement as sought by the Attorney General, denied the request and allowed the conduct of the elections that we are now asked to set aside. Our refusal to enjoin or interfere with the elections was based, in substantial part, upon earlier action of the United States Supreme Court denying request for a stay. We are mindful that the local school and election officials as well as the Winston County electorate should have the right to rely upon prior judicial determinations concerning the 1981 elections, unless there are compelling reasons to the contrary. We find none to be persuasive. If the situation warranted, we have authority to set aside the elections and order the holding of new elections. Voiding, or even modifying past elections, however, is a drastic remedy, and should be applied only where absolutely necessary to vindicate, establish or protect important voting rights. *Saxon v. Fielding,* 614 F.2d 78, 79 (5th Cir.1980), *citing Bell v. Southwell,* 376 F.2d 659, 662 (5th Cir.1967). There is no evidence that in holding the elections the school or local election officials practiced invidious discrimination or egregious conduct or actions which infected the electoral process with irregularities. Indeed, the Government makes no claim that such occurred. The only objection, as raised by the Attorney General, related solely to the majority-vote requirement, and to no other aspect of the state's election procedure. In our view, setting aside past elections under these circumstances is not at all justified.

Nor are we persuaded that the alternative relief proposed by the United States, i.e. to declare the plurality winners in the first election as the duly elected trustees, would be any more appropriate. To do so would not only retroactively alter the electoral framework upon which voters relied when casting their ballots but have the undesirable effect of substituting our judgment for that of the voters in two closely contested races.

Moreover, granting prospective relief will have an almost immediate ameliorative result since the next election of a trustee, which is March 5, 1983, will be determined by plurality voting. That election and each subsequent annual election of a trustee, until federal preclearance is obtained, will be conducted in a manner that vindicates minority interests protected by section 5 of the Voting Rights Act in accordance with the Attorney General's objection. In little more than two years a majority of the school board will have been elected by plurality vote.. Therefore, prospective relief in itself serves to effectuate substantial compliance with the Attorney General's objection with the least intrusion upon the state's established election procedures.

Additionally, we believe that whatever changes in the composition of the school board that may result from the plurality vote requirement will be orderly and not disruptive of the administration of the school district's affairs. Continuity in school administration serves in a vital way to promote the interests of the local community and the general public in the maintenance of a stable school system. For these reasons, we decline to issue retroactive relief of any kind but grant prospective relief to require that all trustee elections from and after this date be determined by plurality vote, until preclearance has been obtained.

A judgment and order consistent with this opinion will be entered.