**David LUCAS, et al., Plaintiffs,**

v.

**Judy TOWNSEND, et al., Defendants.**

**Civ. A. No. 88–166–1–MAC (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

Nov. 2, 1988.

Neil Bradley, Atlanta, Ga., for plaintiffs.

W. Warren Plowden, Ed S. Sell, Jr., Macon, Ga., Della Wager Wells, Atlanta, Ga., for defendants.

Before HILL, Circuit Judge, OWENS, Chief Judge, and FITZPATRICK, District Judge.

OWENS, Chief Judge:

Included for consideration by Bibb County voters on the general election ballot is the question of whether twenty-nine (29) million dollars of general obligation bonds should be issued to pay for the following improvements within the Bibb County school system: (1) air conditioning all existing schools not presently air conditioned; (2) building a fifth high school to serve a projected 53% black–47% white student body; and (3) renovating Northeast High School into a magnet high school. The selection of November 8th, the date of the general election, as the date for this bond referendum was submitted to and precleared by the Attorney General of the United States pursuant to the Voting Rights Act of 1965. Nevertheless, plaintiffs contend that the Voting Rights Act requires the submission to the Attorney General of not only the date for this bond referendum but also the form or the structure of the question itself. Plaintiffs contend that the discretionary decision of the school board to submit the approval or disapproval of the entire twenty-nine (29) million dollar bond issue to the electorate as a single bond issue rather than to submit the questions of (1) air conditioning existing schools, (2) constructing a new school, and (3) renovating Northeast High School as three separate bond issues is a "change affecting voting."[1] Arguing that the form of the bond referendum has been neither submitted to nor precleared by the Attorney General,[2] plaintiffs ask this three-judge court[3] to enjoin the inclusion of this bond referendum on next Tuesday's general election ballot.

## DISCUSSION

In 1965 Congress enacted the Voting Rights Act to eliminate the racial discrimination in voting that Congress believed to still exist in a minority of the states of these United States, chiefly those in the traditional South. As contemplated, only eleven states were brought within the coverage of the Act—South Carolina, Alabama, Alaska, Georgia, Louisiana, Mississippi, Virginia, twenty-six counties in North Carolina, three counties in Arizona, one county in Hawaii, and one county in Idaho. *South Carolina v. Katzenbach*, 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966).

Section Five of the Act, 42 U.S.C. § 1973c, provides that whenever a covered state or political subdivision "shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964 ..." it may not utilize or implement such change until (a) it has secured a judicial determination in the United States District Court for the District of Columbia that the change does not have the purpose or effect of denying the right to vote on account of race or (b) it has submitted such change to the Attorney General of the United States and the Attorney General has not interposed an objection within sixty days. While the Act does not specifically provide a remedy for failure to comply with Section Five, the Supreme Court has held that a complaint for injunctive relief to be heard by a district court of three judges may be filed in any United States District Court and that court, if it is shown that Section Five applies, must enjoin the utilization or implementation of such change until Section Five is complied with. *Allen v. Board of Elections*, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969).

1. During oral arguments held before a district court of three judges, plaintiffs argued that the school board's decision would have been equally as cognizable under Section Five of the Voting Rights Act if the board had determined to submit the issues to the electorate as separate questions rather than as a single package. Thus, plaintiffs effectively argue that *any question* submitted by ballot to the electorate must be precleared by the Attorney General.

2. The parties disagree as to whether the form of the question was in fact submitted to and precleared by the Attorney General. In light of this court's decision, *see* Discussion, *ante,* the court need not address this dispute.

3. "Any action under this section shall be heard and determined by a court of three judges in accordance with the provisions of section 2284 of Title 28 and any appeal shall lie to the Supreme Court." 42 U.S.C. § 1973c.

A district court of three judges convened pursuant to Section 5 of the Voting Rights Act conducts a limited inquiry. First, the court determines whether questioned activity is a covered voting change. If, and only if, that question is answered in the affirmative, the court then determines whether the questioned activity has been precleared either by the Attorney General or by declaratory judgment from the United States District Court for the District of Columbia. *See United States v. Board of Supervisors*, 429 U.S. 642, 645–47, 97 S.Ct. 833, 834–35, 51 L.Ed.2d 106, 110 (1977).

While to effectuate the purpose of the Voting Rights Act, Section 5 is to be given broad scope, *NAACP v. Hampton County Election Comm.*, 470 U.S. 166, 175–76, 105 S.Ct. 1128, 1133–34, 84 L.Ed.2d 124, 132 (1985); *Allen v. Board of Elections*, 393 U.S. 544, 566–67, 89 S.Ct. 817, 832–33, 22 L.Ed.2d 1, 17–18 (1969), "[t]he language of § 5 clearly provides that it applies only to proposed changes in voting procedures." *Beer v. United States*, 425 U.S. 130, 138, 96 S.Ct. 1357, 1362, 47 L.Ed. 2d 629, 638 (1976), quoted in *McCain v. Lybrand*, 465 U.S. 236, 245, 104 S.Ct. 1037, 1043, 79 L.Ed.2d 271, 279 (1984).

Plaintiffs contend that the school board's exercise of its discretion in submitting the school improvement plan to the voters as a single question is by definition a "change affecting voting." Defendants vigorously argue that the school board's exercise of its discretion in this matter is not a "change affecting voting."

While the exercise of discretion in setting dates for elections, changing candidate qualifications or altering voting procedures have all been held to constitute changes requiring Voting Rights Act preclearance, *see e.g., NAACP v. Hampton County Election Comm., supra; Dougherty County, Georgia, Board of Education v. White*, 439 U.S. 32, 99 S.Ct. 368, 58 L.Ed.2d 269 (1978); *Allen v. State Board of Elections, supra*, plaintiffs have cited no authority for the proposition that a school board's or any other board's exercise of discretion in formulating a question to be submitted to the electorate constitutes a change affecting voting. Likewise, defendants are unable to provide this court with authority supporting their position that it is not a covered change.

Though not binding upon this or any other court, the Attorney General's interpretation of both the scope of Section 5 and his regulations promulgated thereunder is entitled to particular deference. *See Dougherty County, Georgia, Board of Education*, 439 U.S. at 39, 99 S.Ct. at 372, 58 L.Ed.2d at 278; *NAACP v. Hampton County Election Comm.*, 470 U.S. at 178–79, 105 S.Ct. at 1135–36, 84 L.Ed.2d at 134. Due to the novel nature of plaintiffs' contentions and the absence of either case authority or a regulation on point, the Attorney General was invited by the panel of three judges to submit his views on the matter under consideration. In response, the United States of America applied for leave to participate in this case as *amicus curiae*. The United States' application was granted on November 1, 1988.

In its *amicus curiae* brief, the United States noted that state law enables county school boards to seek the issuance of bonds upon a determination that the incurrence of such debt is in the "best interests of education in the county." Brief for United States as *Amicus Curiae* ("*Amicus* Brief"), 3; *see* O.C.G.A. § 20-2-430. "[D]ecisions such as the manner in which the purpose of the bonds is identified, whether to seek, at one election, a single bond or several separate bonds for discrete projects or to present separate bond requests at different elections, are left to the defendants' discretion." *Amicus* Brief at 4 (footnote omitted). Commenting upon the above-described state procedure, the Attorney General stated that "the normal formulation of policy by elected representatives, *e.g.*, setting employees' salaries, hiring employees, adopting capital budgets, [does] not constitute [a change] affecting voting, even though [the decisions] result in the exercise of discretion and even though a referendum may be required for final decision." *Id.* at 16. The Attorney General concluded that "the board's decision to air condition existing schools and to construct

new schools is a routine matter for the board to decide and attracts no pre-clearance obligation." *Id.* Further, the school board's "discretionary decision to present the voters with a single vote on the entire bond project is not the kind of change subject to preclearance." *Id.* Such a decision is a "normal legislative decision unrelated to the process of holding elections." *Id.* at 17.

After careful consideration, this court agrees with the views held by the United States. First, Georgia school boards before November 1, 1964, were authorized to and had exercised their discretion in formulating questions for bond referendums. The exercise of discretion by the Bibb County school board was thus no change. Second, the form or structure of a question on a bond referendum is not a standard, practice or procedure affecting voting. The discretionary decision to submit one or more questions to the electorate is one properly left to the political process.

> It tortures the language of the Act to conclude that [the form of a question on a bond referendum], having nothing to do with the conduct of elections as such, is state action "with respect to voting." No one is denied the right to vote; nor is anyone's exercise of the franchise impaired.

*Dougherty County, Georgia, Board of Education,* 439 U.S. at 51, 99 S.Ct. at 379, 58 L.Ed.2d at 286 (Powell, J., dissenting) (language within brackets substituted for original by this court).

Plaintiffs' motion for a preliminary injunction is thus DENIED this 2nd day of November, 1988.