Jerry HENDERSON, Plaintiff,

v.

Charles HARRIS; John Gibson, in his official capacity as Probate Judge of Pike County, Alabama; and the State Democratic Executive Committee, Defendants.

Civ. A. No. 92–D–1198–N.

United States District Court,
M.D. Alabama, N.D.

Oct. 2, 1992.

Edward Still, Birmingham, Ala., for plaintiff.

John H. England, Jr., Tuscaloosa, Ala., for defendant Harris.

John W. Gibson, Troy, Ala., for defendant Gibson.

Jack Drake, Tuscaloosa, Ala., for defendant State Democratic Executive Committee.

Before DUBINA, Circuit Judge, and ALBRITTON and DE MENT, District Judges.

DE MENT, District Judge.

## I. STATEMENT OF THE CASE

The Voting Rights Act of 1964, 42 U.S.C. § 1973, et seq., prohibits any state or subdivision of a state from imposing or applying any "standard, practice or procedure with respect to voting which results in a denial or abridgment of the right of any citizen to vote on account of race or color." 42 U.S.C. § 1973. Section 5 of the Voting Rights Act provides that when certain states and political subdivisions designated by the United States Attorney General[1] "shall enact or seek to administer any ... standard, practice or procedure with respect to voting different from that in force on November 1, 1964," that state or subdivision must first obtain a declaratory judgment from the United States District Court for the District of Columbia or obtain preclearance from the Attorney General of the United States that the proposed standard, practice or procedure "does not have the purpose or will not have the effect of denying or abridging the right to vote on account of race and color." 42 U.S.C. § 1973c.

In this action, plaintiff Jerry Henderson (Henderson) has moved the court to restrain the Pike County election officials from conducting a special primary on October 6, 1992, to determine the Democratic Party nominee for county commissioner, District Five. He claims that the calling of this special election violates section 5 of the Voting Rights Act.[2] Defendant Charlie Harris (Harris) has brought a cross-claim against the State Democratic Executive Committee (SDEC) for its failure to certify him as the Democratic Party's nominee, arguing that by calling a special election instead of certifying him as the nominee, the SDEC violated section 5 of the Voting Rights Act. The SDEC has moved to dismiss the action for lack of subject-matter jurisdiction.

## II. THE FACTS

During the 1980s, Pike County was reapportioned by court order. Pursuant to this order, two majority-black districts were created. District Five is one of these districts and is approximately seventy percent black. The vast majority of the voters in District Five vote Democratic in the general elections.

On September 25, 1992, Judge De Ment held a hearing on the plaintiff's motion for preliminary relief. The parties were then instructed to and did brief the court on the merits of their positions. This opinion and order will dispose of all of the claims on the merits which were brought pursuant to section 5 of the Voting Rights Act.

The state-law claims and federal constitutional claims are not properly before the three-judge court. The district judge to whom this case was originally assigned will issue a separate opinion and order discussing those claims.

---

1. The Attorney General has determined that the state of Alabama and all of its political subdivisions are subject to the preclearance requirements of section 5 of the Voting Rights Act of 1964. 28 C.F.R. part 51, Appendix.

2. The complaint, filed on September 24, 1992, contains a number of federal constitutional claims and state-law claims, in addition to the Voting Rights Act claims. Pursuant to the provisions of 42 U.S.C. § 1973c and 28 U.S.C. § 2284, Chief Judge Gerald B. Tjoflat designated Circuit Judge Joel F. Dubina and District Judge W. Harold Albritton to serve with District Judge Ira De Ment as a three-judge court to hear and determine the section 5 claims.

Plaintiff Jerry Henderson and defendant Charlie Harris were candidates for the Democratic nomination for the Pike County Commission, District Five. On June 2, 1992, the primary election was held. The results were as follows:

|  | Harris | Henderson |
|---|---|---|
| Polling Places | 324 | 441 |
| Absentee Votes | 181 | 30 |
| Total | 505 | 471 |

The Pike County Democratic Executive Committee (PCDEC) declared Harris the winner of the primary.

Henderson challenged the primary results, accusing Harris of election fraud involving the unusually large number of absentee ballots. The PCDEC heard Henderson's allegations, as well as the testimony of a number of absentee voters, and upheld the election results.

Henderson then appealed to the SDEC. Bill Blount (Blount), the Chairman of the SDEC, appointed a committee of five people to hear the election contest appeal, in accordance with SDEC rules. On July 8, 1992, the committee ruled that the PCDEC had not given Henderson enough time to present his case and ordered the matter remanded for a longer hearing.

Again, Henderson presented his case to the PCDEC. Again, the PCDEC upheld the results of the election. Henderson appealed to the SDEC for a second time.

On September 1, 1992, the SDEC subcommittee (consisting of the same members as before) heard arguments from both sides. On September 11, the chairperson of the committee issued an order stating that the committee was deadlocked, with two members voting in favor of Harris' position, two members voting in favor of Henderson's position, and one member abstaining. Around that same time, a letter dated September 11 which purported to be from three of the subcommittee members was sent to Blount. These three members stated that they had voted for Henderson at the September 1 committee meeting.

After he learned of this letter, the subcommittee chair called yet another meeting for September 21. Two of the three subcommittee members who had signed the letter stated that they would not be able to be present at this meeting. The third member resigned from the committee.

Because the two remaining members did not constitute a quorum, the subcommittee chair asked Blount to appoint another member. Blount appointed himself. The subcommittee reviewed the evidence presented to the PCDEC and, in a well-written order, found that abuse of election procedures had occurred. It wrote that

> [t]he testimony presented at the Pike County Democratic Executive Committee makes it crystal clear that reform is needed in the way absentee ballots are handled. Some voters testified that they did not know they were voting. Some voters testified that they did not know whom they voted for. Some voters applied for an absentee ballot because they were going to be out of the county on election day, but testified they were sick. Some voters testified that they did not vote. Some testified that they voted as a matter of convenience and some testified they would never vote again.

The subcommittee, however, wrote that it found itself unable to decide which of the two candidates had won the primary and called for a new primary to be held on October 6, 1992. It is the October 6 primary which Henderson seeks to enjoin.

## III. DISCUSSION

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1973c and is properly convened pursuant to 28 U.S.C. § 2284.

### A. *The Voting Rights Act*

Section 5 of the Voting Rights Act of 1964, 42 U.S.C. § 1973c, as amended, provides that certain jurisdictions, including Pike County, Alabama, may not implement any "standard, or practice, or procedure with respect to voting" different from that in place on November 1, 1964 without first seeking a declaratory judgment from the United States District Court for the District of Columbia or, in the alternative, seeking review and preclearance of the pro-

posed change from the United States Attorney General. *NAACP v. Hampton County Election Comm'n*, 470 U.S. 166, 168–69, 105 S.Ct. 1128, 1130–31, 84 L.Ed.2d 124 (1985) (citing 42 U.S.C. § 1973c).

■ At the outset, it should be noted that this three-judge court has a limited role in resolving this dispute. It may consider only whether the challenged action is an event subject to preclearance under section 5 of the Voting Rights Act, and, if so, whether the action has been subjected to the required federal scrutiny. *See United States v. Bd. of Super. of Warren County*, 429 U.S. 642, 645–46, 97 S.Ct. 833, 835, 51 L.Ed.2d 106 (1977) (per curiam); *Allen v. State Bd. of Elections*, 393 U.S. 544, 561, 89 S.Ct. 817, 829, 22 L.Ed.2d 1 (1969).

■ Section 5 requires preclearance of any change in a "standard, practice, or procedure with respect to voting" that carries with it the "potential for discrimination" against African–Americans. *See also Hampton County*, 470 U.S. at 181, 105 S.Ct. at 1137.[3] The three-judge court may not reach the issue specifically reserved to the Attorney General of the United States or to the District Court for the District of Columbia, namely, whether the change in election standard, practice or procedure actually has a discriminatory purpose or effect. *See Perkins v. Matthews*, 400 U.S. 379, 385, 91 S.Ct. 431, 435, 27 L.Ed.2d 476 (1971).

### B. *Plaintiff Henderson's Claims*

Henderson maintains that the SDEC violated section 5 by calling a special primary in October without first seeking preclearance of this change in the date of the primary election. In response, the SDEC argues that the calling of a special election is not a "change" within the meaning of section 5, when that election is called pursuant to a statute which is not subject to preclearance.

Section 17–16–87 of the Code of Alabama (1975) was originally enacted in 1931 and has not been modified since its enactment. The statute reads as follows:

If, upon the hearing of any contest for office, as provided for in this article, the committee, after investigation and a hearing of the contest, shall determine that it is impossible from the evidence before it to decide who is the legally nominated candidate for the office contested, it shall have the right and authority to direct a new primary election for the nomination to any such office ...

Ala.Code § 17–16–87 (1975).

■ Because section 5 affects only those procedures with respect to voting which are different from those in effect on November 1, 1964, section 17–16–87 does not require preclearance, although any modifications to it would. An action taken to enforce a statute that has already been precleared does not itself require preclearance. *Henderson v. Graddick*, 641 F.Supp. 1192, 1200 (M.D.Ala.1986) (three-judge court). Similarly, by this reasoning, an action taken pursuant to a statute which does not require preclearance does not itself require preclearance.

Henderson, however, draws the court's attention to *Lucas v. Townsend*, 486 U.S. 1301, 108 S.Ct. 1763, 100 L.Ed.2d 589 (1987) (Kennedy, J.) (in chambers). In that case, a three-judge panel concluded that the Bibb County Board of Education's discretionary setting of a special election on a bond issue was not a "change" covered by section 5 because it did not represent a change in the law as it existed prior to the enactment of the Voting Rights Act. *See Lucas v.*

---

**3.** It is far from clear whether Supreme Court precedent compels a plaintiff to show that the challenged action carries with it the potential for discrimination. Although the Court has written that such proof may be required, the Court has noted the expansive scope of the Voting Rights Act. *Dougherty County Bd. of Education v. White*, 439 U.S. 32, 38, 99 S.Ct. 368, 372, 58 L.Ed.2d 269 (1978); *Hampton County*, 470 U.S. at 175–76, 105 S.Ct. at 1133; *Allen*, 393

U.S. at 566, 89 S.Ct. at 832. The Court has invoked the legislative history of section 5 for the proposition that any change in a standard, practice or procedure with respect to voting made by a covered jurisdiction requires preclearance before its implementation. *Dougherty*, 439 U.S. at 39, 99 S.Ct. at 372. This court does not resolve this question, as we find that the challenged actions of the SDEC do offer the potential for discrimination.

*Townsend,* 686 F.Supp. 902, 904–5 (M.D.Ga.1988). In an in-chambers opinion, however, Justice Kennedy wrote:

> The conclusion is most problematic under our precedents, *see e.g., NAACP v. Hampton County Election Comm'n,* 470 U.S. 166, 178 [105 S.Ct. 1128, 1135, 84 L.Ed.2d 124] (1985) (noting that it could not be seriously disputed that "a change in the date of an election, if effected by statute, requires approval by the Attorney General under § 5").

*Id.* 486 U.S. at 1304, 108 S.Ct. at 1764.

Justice Kennedy also noted that a Department of Justice regulation states that all special elections are subject to preclearance. *Id.* Because the Attorney General played a central role in the formulation and implementation of section 5, the Justice Department's interpretation of its scope has been held to be entitled to special deference. *See, e.g., United States v. Bd. of Comm'rs of Sheffield,* 435 U.S. 110, 131, 98 S.Ct. 965, 979, 55 L.Ed.2d 148 (1978).

The Department of Justice regulation states:

> (a) The conduct of a special election (e.g., an election to fill a vacancy; an initiative, referendum, or recall election; or a bond issue) is subject to the preclearance requirement to the extent that the jurisdiction makes changes in the practices to be followed.
> (b) Any discretionary setting of the date for a special election or scheduling of events leading up to or following a special election is subject to the preclearance requirement.

28 C.F.R. § 51.17(a), (b) (1991).

■ While the event scheduled for October 6 is not technically an "election," but a party primary in which a candidate will be nominated to appear on the ballot in the November 3 general election, the primary winner will be the only one on the general election ballot, since no other party has certified a candidate. Accordingly, the court treats the primary the same as an election.

■ Moreover, the Supreme Court has repeatedly observed that the Voting Rights Act was aimed at "the subtle, as well as the obvious state regulations which have the effect of denying citizens their right to vote because of their race" and that section 5 has a correspondingly broad scope. *See, e.g., Dougherty,* 439 U.S. 32, 38, 99 S.Ct. 368, 372, 58 L.Ed.2d 269; *Georgia v. United States,* 411 U.S. 526, 532, 93 S.Ct. 1702, 1706, 36 L.Ed.2d 472 (1973); *Allen,* 393 U.S. at 566, 89 S.Ct. at 832. Given the weight of Supreme Court precedent, we must conclude that the SDEC's setting of a special primary election is a change in a standard, practice or procedure with respect to voting.

Even so, Henderson must still demonstrate that this change in procedure creates the potential for racial discrimination. Here, the SDEC maintains that there is no such potential because both of the candidates as well as the majority of Pike County, District Five voters are African–American. The SDEC notes that a black candidate will be nominated from District Five and black voters will elect him, no matter which of the two contenders is ultimately victorious. The SDEC further depicts this entire scenario as an internecine struggle between two factions of African–American Democratic politicians. According to the SDEC, while this conflict may be divisive, it is not racially discriminatory.[4]

Henderson argues, however, that it is the *date* of the special election, not the calling of the election itself that creates the poten-

---

**4.** Counsel for the SDEC, in his letter brief, writes:

> By way of background you should be apprised that this is another in a long line of disputes within the Democratic Party between the Alabama Democratic Conference (ADC) and the Alabama New South Coalition (ANSC). Both Mr. Henderson and Mr. Harris are African–American. These two black candidates ran for county commission in Pike County.

He further states that "[t]his is a garden-variety election contest between two black candidates" and that "[p]arties [to election contests of this nature] inevitably run off to court, either state or federal court, (almost always erroneously), seeking relief to which they are not entitled. Added to ... [this] ... is the fact that within the Democratic Party, election contests are all a kind of family feud." Defendant's Letter Brief at 1, 3.

tial for discrimination. He suggests that this might be the first time that the SDEC has ever called a special election and given the candidates and the electorate a mere two weeks notice. Therefore, because both of the candidates and a majority of the voters affected are black, the potential for discrimination is present. In other words, the truncated pre-election period could result in low voter turnout and, consequently, less black voter participation in District Five as compared to voters in other districts or counties who enjoyed a much longer pre-election period. Viewed in this light, the SDEC's decision to call the special primary election for October 6, does carry with it the potential for racial discrimination. In a section 5 case, the court's inquiry ends here.

Because we hold that the SDEC's calling of a special election was a change in a standard, practice or procedure with respect to voting which requires either judicial or administrative preclearance, because we hold that the potential for discrimination exists, and because the SDEC did not seek preclearance, Henderson's motion for a temporary restraining order is due to be granted.

### C. *Defendant Harris' Claims*

Harris has brought a cross-claim against the SDEC, alleging that its violation of Alabama Code section 17–16–86 creates a change in procedure with respect to voting that is subject to judicial or administrative preclearance.

Section 17–16–86 was originally enacted in 1931. It has not been amended since its enactment and therefore is not subject to preclearance. The statute reads, in pertinent part:

Upon the hearing of any contest, if the state or county executive committee finally determines who is the legal nominee for any office, it shall make a declaration of its judgment upon the question, but a failure of the committee in which the contest is brought to hear and determine the same as much as forty days before the election in November shall be treated as a dismissal or a rendition of judgment against the contestant . . .

Ala.Code § 17–16–86 (1975).

The facts indicate that the SDEC did not determine more than forty days prior to the November election which candidate was to receive the party nomination, even though it did *call* for a new primary election within that period. Thus, Harris argues that, by the language of this statute, the SDEC was bound to certify him as the Democratic nominee, even in the face of the SDEC's finding that it is impossible to determine who won the primary because of the absentee ballot questions.

Given the broad scope of section 5, as discussed above, it is clear that ordering a new primary to be held less than forty days before the November election is a modification of Alabama law and a change in a standard, practice or procedure with respect to voting which requires preclearance. Furthermore, this change, which would shorten the time for the Democratic nominee to campaign against a potential white write-in opponent in the general election, has the potential for discrimination.

To the extent that Harris seeks to enjoin the October 6 primary until it is precleared, his motion is due to be granted. However, Harris also seeks to enjoin the certification of anyone other than himself as the Democratic candidate. This goes beyond the issues properly before the court at this time. We will go no further than to hold that a special primary election must be precleared.

Based on the foregoing, it is CONSIDERED and ORDERED that Henderson's motion for a temporary restraining order be and it is hereby GRANTED, and the SDEC and the Honorable John Gibson, in his capacity as Probate Judge of Pike County, be and they are hereby enjoined from holding a special primary election to select the Democratic Party nominee for Pike County Commission, District Five, until preclearance has first been obtained from the United States Department of Justice or the United States District Court for the District of Columbia.

**294**

It is further CONSIDERED and ORDERED that cross-claimant Harris' motion for a temporary restraining order, or in the alternative, preliminary injunction, be and the same is hereby DENIED and that defendant SDEC's motion to dismiss be and the same is hereby DENIED.

The court retains jurisdiction for the purpose of entering such other or further orders as may be requested or appropriate under the law.