**STATE OF NEW YORK, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 94–2219.**

United States District Court,
District of Columbia.

Nov. 4, 1994.

As Corrected Nov. 17, 1994.

---

G. Oliver Koppell, Atty. Gen. of the State of N.Y., Harvey J. Golubock, Joel Graber, Mark G. Peters, New York City, for plaintiff.

John K. Tanner, Richard B. Jerome, Colleen M. Kane, T. Christian Herrer, Voting Section, Civ. Rights Div., Dept. of Justice, Washington, DC, for defendant.

Before BUCKLEY, Circuit Judge, and LAMBERTH and FRIEDMAN, District Judges.

*MEMORANDUM AND ORDER*

PER CURIAM.

■ Plaintiff, the State of New York, has sought a preliminary injunction from this Court ordering certain state judicial elections to go forward on November 8, 1994, notwithstanding the fact that the newly created judgeships at issue in the elections have not received preclearance as required under section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c.[1] After the par-

---

1. Plaintiff contends that its motion for summary judgment is also ripe for decision at this time. This is incorrect. Rules 56(a) of the Federal Rules of Civil Procedure provides that a party may move for summary judgment "at any time after the expiration of 20 days from the commencement of the action." Since plaintiff's complaint was filed on October 13, 1994 the earliest date on which it could have moved for summary judgment was November 2, 1994. Local Rule 108(b) states that "[w]ithin 11 days of the date of service [of a motion] or at such other time as the Court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion." Assuming, arguendo, that plaintiff's summary judgment motion was served on the earliest possible date (November 2, 1994), defendant United States would normally have 11 days in which to respond (November 13, 1994).

The fact that plaintiff sought to file with this Court a memorandum of points and authorities in support of its improperly filed motion for summary judgment, a statement of material facts under Local Rule 108(h) and affidavits and ex-

ties had submitted their papers on the motion for preliminary injunction, they entered into a Stipulation that, subject to the approval of the Court, would permit the election to go forward on November 8, 1994, but would enjoin certification of the results of the election until preclearance of the voting changes had been obtained either from the Attorney General or from this Court, or until a hearing had been held and a determination made by the Court regarding which judicial seats should be subject to the injunction. The Court denies New York's request for an injunction, but, with some reluctance, enters an Order along the lines proposed jointly by the parties that enjoins the certification of the election results.

## I. Facts

■ Section 5 of the Voting Rights Act of 1965 requires any state or political subdivision covered by the Act to obtain preclearance of proposed changes to voting laws before those changes are implemented. Preclearance may be obtained in one of two ways. A state may seek judicial preclearance by filing a declaratory judgment action in the United States District Court for the District of Columbia, or it may seek administrative preclearance by submitting the proposed change to the Attorney General of the United States. 42 U.S.C. § 1973c. The purpose of the preclearance requirement is to ensure that proposed changes to voting laws "do[ ] not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color." *Id.*

The State of New York has sought from the Attorney General preclearance for the creation of 15 new judgeships on the state's trial court of general jurisdiction, the Supreme Court of New York. Some of these judgeships were created as early as 1982, some in 1990 and one as recently as 1994. New York has been trying to obtain administrative preclearance from the Attorney General for 14 of the judgeships for just over a year and has recently filed its request for preclearance with respect to the judgeship created by the 1994 New York State Legislature.[2] The Attorney General has refused to grant such preclearance until she has received sufficient information from New York to determine whether the state has met its burden of establishing that the new judgeships will not have a negative impact on minority voters. The Attorney General continues to demand additional information, which New York continues to provide.

Elections which would fill two of the proposed new judgeships subject to preclearance authorization (including the one created by the 1994 legislation) are scheduled for November 8, 1994. Ballots for the November 8 election have already been printed with candidates for the two unprecleared judgeships listed, and we are advised that absentee ballots have already been cast. Concerned that it would not receive preclearance from the Attorney General in time to permit the new judgeships to be filled during the regular November 8 elections, New York filed suit in this Court seeking a declaratory judgment that the new judgeships do not violate section 5 of the Voting Rights Act of 1965. While recognizing that a lawsuit for declaratory judgment is an appropriate way to obtain preclearance as an alternative to the Attorney General's preclearance, the United States argues that additional discovery is necessary in order to provide this Court with the information necessary for it to make an

hibits prior to the date on which a motion for summary judgment could permissibly have been filed does not in any way alter the time within which defendant was required to respond to the summary judgment motion. This Court has not received, nor would it be inclined to grant, any request to alter the time for response established by Rule 108(b). Thus, plaintiff's summary judgment motion is not ripe at this time.

2. At oral argument, the Attorney General of the State of New York, in response to a question from the Court, said that New York had not sought preclearance prior to 1993 because it was

not clear that judicial elections were subject to preclearance authorization under the Voting Rights Act until the Supreme Court's decision in *Clark v. Roemer*, 500 U.S. 646, 111 S.Ct. 2096, 114 L.Ed.2d 691 (1990). The United States disputed this statement, saying that it was clear that judges were covered by the preclearance authorization requirements of the Voting Rights Act as early as 1986, after the Supreme Court summarily affirmed *Haith v. Martin*, 618 F.Supp. 410 (E.D.N.C.1985), *aff'd mem.*, 477 U.S. 901, 106 S.Ct. 3268, 91 L.Ed.2d 559 (1986).

accurate section 5 determination. It also opposes the issuance of the injunction urgently requested by New York State.

## II. Analysis

The Supreme Court has unequivocally stated that "[n]o new voting practice or procedure may be enforced unless the State or political subdivision has succeeded in its declaratory judgment action or the Attorney General has declined to object." *United States v. Board of Supervisors of Warren County*, 429 U.S. 642, 645, 97 S.Ct. 833, 834, 51 L.Ed.2d 106 (1977). In the instant case, it is clear that the Attorney General has *not* "declined to object" to the proposed judgeships. To the contrary, the Attorney General has made it quite clear that administrative preclearance will not be granted *until* New York has submitted additional information concerning the potential impact of the new judgeships.

The question raised by New York State's motion for a preliminary injunction was whether the Court may properly direct that the two judgeships on the ballot for November 8 must be included in the November 8 elections, pending the outcome of New York's declaratory judgment action before the Court, or, on the other hand, whether section 5 requires the completion of the preclearance authorization process before those elections may be held. The parties have presented a Stipulation and Proposed Order to the Court by which they propose an alternative solution. They propose that the Court permit the election to go forward but enjoin the enforcement or certification of the results of the election until all voting changes associated with the creation of such judgeships by the New York State Legislature have been precleared either by this Court or by the Attorney General.[3]

The Supreme Court considered the question of unprecleared judgeships in *Clark v. Roemer*, 500 U.S. 646, 111 S.Ct. 2096, 114 L.Ed.2d 691 (1990). In finding that the District Court should have enjoined elections relating to certain unprecleared judgeships, the Court held that "a voting change in a covered jurisdiction will not be effective as law until and unless [pre]cleared." *Id.* at 652, 111 S.Ct. at 2101 (internal quotations omitted). "Failure to obtain either judicial or administrative preclearance renders the change unenforceable." *Id.* (internal quotations omitted). In the circumstances before the Court in *Clark v. Roemer*, the Court expressly stated: "Section 5's prohibition against implementation of unprecleared changes *requires* the district court to enjoin the election." *Id.* at 654, 111 S.Ct. at 2102 (emphasis added).

■ It would be anomalous for this Court to grant the injunctive relief originally requested by New York because it would require by judicial fiat that an election go forward before the completion of the preclearance authorization process. Both before and after the Supreme Court's decision in *Clark v. Roemer*, courts presented with the converse of the situation before us, namely, whether to enter an injunction *preventing* an election rather than one permitting one, have invariably granted the request for an injunction. In the absence of preclearance authorization, in each case the courts concluded that such injunctive relief was mandatory and absolutely fundamental to effectuate the purposes of section 5. This Court has invariably granted an injunction enjoining an election from going forward in such cases. *See State of Texas v. United States*, Civil Action No. 94–1529 (D.D.C. Sept. 27, 1994) (three-judge court); *Busby v. United States*, Civil Action No. 82–0665 (D.D.C.1982) (three-judge court). To enter an injunction *requiring* an election to go forward would run counter to *Clark* and all precedents in this Court. For these reasons, the Court must deny New York's motion for a preliminary injunction. *See Clark v. Roemer*, 500 U.S. at 654, 111 S.Ct. at 2102.

In submitting their Stipulation and Proposed Order, the parties seem now to start with a mutual understanding that *Clark v. Roemer* directs that judgeships must be precleared in order to be lawful. Plaintiff contends, however, that the Supreme Court in *Clark* recognized that an injunction preventing an election for an unprecleared seat is not always the appropriate solution when

---

**3.** The parties' Stipulation is included as an Appendix to this Memorandum and Order.

such an election is scheduled to take place. New York points out that the Supreme Court in *Clark* noted that "[a]n extreme circumstance might be present if a seat's uncleared status is not drawn to the attention of the State until the eve of the election and there are equitable principles that justify allowing the election to proceed." *Clark v. Roemer*, 500 U.S. at 654, 111 S.Ct. at 2102. The Court is reluctant to characterize New York's predicament as such an exigent situation. New York has been aware of the need to seek preclearance authorization since either 1986 or 1990 [4] and has known that the Attorney General has been unwilling to preclear its new judgeships for the past year. There are, however, other equitable principles that do concern the Court.

New York State's judicial election ballots do not designate which seats are the uncleared seats. Indeed, candidates do not run for a particular seat but run at-large in a large field in which the four individuals in Bronx County and the eight individuals in Kings County with the highest vote totals will be elected. Thus, it is not so simple as saying that the candidates who are running for judgeships A, B and C are legitimate candidates, while those running for judgeship D are not. All (or none) may be legitimate candidates for three of the seats in Bronx County, but not the fourth, and for seven of the seats in Kings County but not the eighth. In *Clark v. Roemer*, 500 U.S. 646, 111 S.Ct. 2096, *State of Texas v. United States*, Civil Action No. 94–1529 and *United States v. Arizona*, CIV–94–1845–PHX–EXC (D.Ariz. Oct. 14, 1994) (three-judge court), the judicial elections involved designated seats and individual candidates for those seats could be removed from the ballot. That is not the case here. In these circumstances, neither the Department of Justice nor the Court could currently determine which judgeships are in violation of section 5. Furthermore, in most of the seats at issue, there are no incumbents seeking reelection and thus the candidates are not currently holding judicial office.

▮▮ For these reasons, the parties have asked the Court to permit the November 8 election to go forward, but to enjoin certification of the results until after preclearance of the judgeships has been obtained. The Department of Justice concedes that it has never before asked a court to adopt this approach to an election involving uncleared judgeships. It says, however, that New York's judicial elections present a unique situation. Cognizant that an injunction against the election proceeding would be extremely costly and disruptive, the parties are proposing a narrow injunction that they say would preserve the status quo by precluding certification or enforcement of the election results until after preclearance is obtained. In a case involving a section 5 challenge, the Voting Rights Act provides the mechanism for preventing the implementation of a voting change that has not been precleared. The Court cannot *sua sponte* decide to enjoin an election. A party must first come before the Court and request relief. No party has petitioned this Court to prohibit the November 8 election from going forward. All we have been asked to do is prevent the election from having any effect until the judgeships are precleared. The Court is permitted to prevent the certification of election results for uncleared judges, and it does so today.

### III. Conclusion

For the foregoing reasons, the plaintiff's request for a preliminary injunction is denied and the parties' Stipulation is approved. Pursuant to the Stipulation, the Court has fashioned its own Order rather than adopting the parties' Proposed Order.

Accordingly, upon consideration of the motion for preliminary injunction and the opposition thereto, oral argument before the Court, and the parties' Stipulation, it is hereby

ORDERED that Plaintiff's motion for a preliminary injunction is DENIED; and it is further

ORDERED that the November 8, 1994, election is enjoined to the extent that the plaintiff, its agents, employees, attorneys and all others acting in concert with it shall not

4. *See* note 2, *supra*.

take any steps to enforce or certify the results of the November 8, 1994, election for judgeships in the Second and Twelfth Judicial Districts created by legislation that has not been precleared by the Attorney General or by the Court as required by section 5 of the Voting Rights Act of 1965, unless and until preclearance of all voting changes associated with the creation of judgeships in New York Laws of 1982, chapter 500, New York Laws of 1990, chapter 209, and New York Laws of 1994, chapter 440, is obtained from this Court or from the Attorney General; and it is further

ORDERED that plaintiff is enjoined from certifying the results of the November 8, 1994 election for each of the Supreme Court judgeships in the Second and Twelfth Judicial Districts subject to election on November 8, 1994, until (1) preclearance of the voting changes identified above has been obtained from the Attorney General or this Court, or (2) a hearing has been held and a determination made by this Court regarding which judicial candidates should be subject to the jurisdiction ordered above, whichever is earlier; and it is further

ORDERED that further proceedings in this action are stayed pending a Section 5 administrative determination by the Attorney General on the voting changes at issue in this proceeding; plaintiff New York State may file a summary judgment motion on November 21, 1994, if a Section 5 determination has not been made by the Attorney General by that date; defendant United States' response to such motion shall be due on December 5, 1994; and it is further

ORDERED that, subject to final order of this Court, the judgeships referred to above shall not, after November 9, 1994, be declared vacant; and it is further

ORDERED that this order shall not affect any other pending litigation, and that the order herein is limited to the certification of the results of the election.

SO ORDERED.